SILVER DOLLAR CITY, INC.,
a Missouri corporation,
Respondent,

v.

KITSMILLER CONSTRUCTION
COMPANY, INC., a Missouri
corporation, Appellant.

No. 18910.

Missouri Court of Appeals,
Southern District,
Division Two.

March 15, 1994.

Motion for Rehearing and Transfer
Denied April 6, 1994.

Application to Transfer Denied
May 26, 1994.

Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for appellant.

James W. Newberry and Randy R. Cowherd, Schroff, Glass & Newberry, P.C., Springfield, for respondent.

CROW, Judge

The question is whether Kitsmiller Construction Company, Inc. ("Kitsmiller"), a Missouri corporation, is entitled to arbitration of a claim by it against Silver Dollar City, Inc. ("SDC"), a Missouri corporation. The dispute arises from a written agreement between the two dated June 27, 1991, wherein Kitsmiller promised to perform certain

work on a construction project and SDC promised to pay Kitsmiller $648,656. The agreement contained an arbitration provision, quoted *infra.*

This suit began April 10, 1992, when SDC filed a two-count petition against Kitsmiller. The petition averred Kitsmiller was demanding arbitration of a claim against SDC for $341,432.17. By count I, SDC sought relief including a declaration that the arbitration provision was, for sundry reasons, unenforceable, together with an order that arbitration "be terminated and permanently stayed." In count II, SDC prayed for an injunction barring Kitsmiller from pursuing arbitration.

Kitsmiller counterclaimed, asking that SDC be required to submit to binding arbitration of Kitsmiller's claim.

Both parties ultimately moved for summary judgment. The trial court held Kitsmiller was not entitled to arbitration and that its exclusive remedy was chapter 429, RSMo 1986, as amended (mechanics' lien). Kitsmiller appeals.

The June 27, 1991, agreement ("the Contract") designates SDC as "the Owner" and Kitsmiller as "the Contractor."[1] The Contract identifies the project as: "Grand Palace." The Contract also states, "The Architect is: Silver Dollar City, Inc."

Three provisions in the Contract are pertinent to the issues confronting us. The provisions are:

10.5 The Architect will interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect will make initial decisions on all claims, disputes or other matters in question between the Owner and Contractor, but will not be liable for results of any interpretations or decisions rendered in good faith. The Architect's decisions in matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents. All other decisions of the Architect, except those which have been waived by making or acceptance of final payment, shall be subject to arbitration upon the written demand of either party.

10.8 All claims or disputes between the Contractor and the Owner arising out or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as required under Paragraph 10.5. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect or any of the Architect's employees or consultants. The agreement herein among the parties to the Agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

---

1. The face of the Contract names the Contractor as: "Kitsmiller Construction Co., Inc. and Vinyard Construction Co., Inc. J/V." However, no one purporting to represent Vinyard Construction Co., Inc., signed the Contract on behalf of that entity. None of the issues we must decide hinge on whether Vinyard Construction Co., Inc., is a party to the Contract.

19.1 The Contract shall be governed by the law of the place where the Project is located.

While Kitsmiller was working on the project, disputes arose regarding change orders, progress of the work, payment of vendors and subcontractors, and other subjects. Kitsmiller eventually left the project site on or about October 21, 1991.

One of the facts established by the pleadings is: "[Kitsmiller], under date of December 20, 1991, served a Notice of Intent to File Mechanic's Lien."

On February 10, 1992, Kitsmiller filed a mechanic's lien against the Grand Palace in the office of the Clerk of the Circuit Court of Taney County[2] in the sum of $341,432.17.

Kitsmiller thereafter filed a "Demand for Arbitration" with the American Arbitration Association. The document is dated February 11, 1992. It avers, *inter alia*:

Nature of Dispute: Contract dispute for breach of contract in connection with Grand Palace project ... for delayed and withheld payments, for delayed and withheld change orders and payments for extra/additional work performed at [SDC's] request, for acceleration and lost efficiency costs, expenses and damages due to changed and increased scope of work and incomplete plans, and for delays, bad faith, hinderance, interference and lack of cooperation on the part of [SDC].

As to the relief sought, the document states: "$341,432.17, plus interest. Award to be enforced as Judgment of Mechanic's Lien in Circuit Court of Taney County, Missouri."

SDC's motion for summary judgment alleges: "[O]n February 21, 1992, [SDC] filed its answer to [Kitsmiller's] demand to the American Arbitration Association." In its brief, Kitsmiller acknowledges this.

The record contains an affidavit of SDC's "Vice President–Finance and Treasurer" stating that by letter dated April 3, 1992, the American Arbitration Association declared it

would proceed with arbitration unless stayed by court order. The affidavit further states the American Arbitration Association submitted a list of potential arbitrators and that unless SDC responded by April 13, 1992, it would be deemed to have approved all of them. This evidently prompted SDC to file the instant suit which, as reported earlier, was commenced April 10, 1992.

On May 14, 1992, Builders Steel Co., Inc., filed in the Circuit Court of Taney County a petition to enforce a mechanic's lien against the Grand Palace, naming as defendants Tulsa Steel Mfg. Company, Inc., and SDC. That action was assigned number CV792–265CC. We henceforth refer to it as "case 265."

SDC filed a motion in case 265 praying that Kitsmiller be joined as a party per § 429.280, RSMo 1986. On July 2, 1992, that motion was granted.

On August 5 or 6, 1992, Kitsmiller filed a cross-claim and counterclaim in case 265. In that pleading, Kitsmiller averred SDC owed Kitsmiller $341,432.14, but asked that case 265 be stayed pending the outcome of arbitration between Kitsmiller and SDC or, alternatively, that any proceedings in case 265 between Kitsmiller and SDC be stayed pending the outcome of arbitration. Kitsmiller further prayed for judgment against SDC in the amount of the eventual arbitration award and for a mechanic's lien in such amount.

Turning from case 265 back to the instant suit, we find the next relevant occurrence was August 31, 1992, when Kitsmiller filed an "Application to Compel Arbitration." It cited the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and § 435.355.1, RSMo 1986,[3] and prayed for an order compelling SDC to submit to arbitration of Kitsmiller's claim in accordance with paragraph 10.8 of the Contract (quoted *supra* ).

9 U.S.C. § 2, a part of the Federal Arbitration Act ("FAA"), reads:

2. The Grand Palace is located in Taney County. This suit was filed in the Circuit Court of Taney County and transferred to the Circuit Court of Christian County on change of venue.

3. Section 435.355, RSMo 1986, is part of Missouri's "Uniform Arbitration Act," which comprises §§ 435.350–.470, RSMo 1986. *See*: § 435.470, RSMo 1986. In this opinion, a reference to any of those sections is to RSMo 1986.

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 435.350 reads:

... a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract....

Section 435.355.1 reads:

On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

On September 8, 1992, Kitsmiller filed in the instant suit an amended application to compel arbitration, citing the same statutes as its motion of August 31, 1992.

On September 10, 1992, the trial court held a hearing in the instant suit. A docket entry that date reads, in pertinent part: "Motion to Compel Arbitration denied."

On April 23, 1993, SDC filed its motion for summary judgment in the instant suit, asserting Kitsmiller was barred from arbitration by *State ex rel. Clayton Greens Nursing Center, Inc. v. Marsh*, 634 S.W.2d 462 (Mo. banc 1982).

In *Clayton Greens,* a plumbing subcontractor on a construction project sued the general contractor in Jackson County for breach of contract. Some three weeks later, another subcontractor on the same project filed a mechanic's lien suit in St. Louis County against the property owner, the general con-tractor, and the plumbing subcontractor. A year later, the plumbing subcontractor obtained a default judgment against the general contractor in the Jackson County suit. The plumbing subcontractor thereupon sought to garnish a debt allegedly owed the general contractor by the property owner. The property owner brought a prohibition action to bar the Jackson County judge from proceeding with the garnishment.

The Supreme Court of Missouri held the suit in St. Louis County was an equitable mechanic's lien action per §§ 429.270–.300, RSMo 1978. 634 S.W.2d at 465. Consequently, upon the filing of the St. Louis County suit, the Jackson County suit should have been stayed per § 429.300. 634 S.W.2d at 465. Thus, the Jackson County judge was without jurisdiction to enter the default judgment and conduct garnishment proceedings. *Id.*

SDC argued to the trial court that because Kitsmiller was a party to case 265, an equitable mechanic's lien suit, Kitsmiller was limited to its remedy in that suit and could not resort to arbitration. SDC insisted: "[T]o allow an arbitrator and a judge to determine the same dispute is to beg for inconsistent judgments which is against the intent of the legislature in [§§ 429.270–.300] and the interpretation of the same by the Supreme Court as shown in *Clayton Greens.*"

On May 12, 1993, Kitsmiller filed its motion for summary judgment in the instant suit. Accompanying it was an affidavit of Kitsmiller's president stating, *inter alia,* that in performing its work on the Grand Palace, Kitsmiller used employees who were nonresidents of Missouri and subcontractors who were nonresidents of Missouri. The affidavit further states that Kitsmiller, in working on the Grand Palace, used materials purchased from an Arkansas company and installed steel and fittings manufactured in other states. Consequently, argued Kitsmiller, the Contract involved a transaction in interstate commerce, hence the FAA applied. *See*: 9 U.S.C. § 2 (quoted *supra*). The relief prayed for in Kitsmiller's motion for summary judgment included an order compelling

arbitration of its dispute with SDC per paragraph 10.8 of the Contract.

■ The FAA was passed by Congress pursuant to its power to regulate interstate commerce. *Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985). One of the cases cited to the trial court by Kitsmiller in support of its motion for summary judgment was *Brookfield R–III School District v. Tognascioli Gross Jarvis Kautz Architects, Inc.,* 845 S.W.2d 103 (Mo.App.W.D.1993). There, the principal question was whether a contract for architectural services on a construction project involved interstate commerce, thereby invoking the FAA. 845 S.W.2d at 104. Several subcontractors and suppliers for the project were located outside Missouri. Suppliers shipped construction materials across state lines and their employees crossed state lines to work on the project. 845 S.W.2d at 104–05. The Western District of this Court held the contract involved interstate commerce, thus the FAA applied and a provision in the contract requiring disputes to be settled by arbitration was enforceable. 845 S.W.2d at 105.

On June 7, 1993, the trial court filed the amended order from which this appeal arises. The order reads, in pertinent part:

> ... summary judgment is granted in favor of [SDC] and against [Kitsmiller] on [SDC's] motion for summary judgment, filed on April 23, 1993, because there exists no genuine issue of material fact and [SDC] is entitled to judgment as a matter of law. Specifically, the court finds that Chapter 429, RSMo., provides the exclusive remedy, and that [Kitsmiller], both in its purported contract (see Article 19) and in its filing of a mechanics' lien in Taney County, Missouri, on February 10, 1992, availed itself of the benefits of the mechanics' lien statutes of the State of Missouri. Additionally, the court finds that the procedure mandated by the Missouri statutes are not preempted by the Federal Arbitration Act, even though some contractual matters may have arguably involved matters in interstate commerce. Finally, the court notes that in the Taney County case [265] now on file, it will be possible in one

forum to resolve all of the disputes between parties who were involved in the same construction project from which the suit arises.

> [Kitsmiller's] motion for summary judgment is denied for the reasons set out above, and for the reason that there still exist unresolved issues of material fact related to [the] motion regarding the purported contract referred to in the pleadings.

The first of Kitsmiller's three points relied on reads:

> The trial court erred in refusing to grant Kitsmiller's motions to compel arbitration of the disputes between Kitsmiller and SDC, and in refusing to grant Kitsmiller's motion to stay these judicial proceedings pending arbitration, because the trial court was required to do so under 9 U.S.C. § 3, 9 U.S.C. § 4, § 435.355.1 and § 435.355.4, RSMo., in that article 10.8 of the agreement executed by the parties requires arbitration of all claims and disputes arising out or relating to the agreement, or the breach thereof.

Section 435.355.2 reads:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

Section 435.440 reads, in pertinent part:

1. An appeal may be taken from:

> (1) ....

> (2) An order granting an application to stay arbitration made under subsection 2 of section 435.355;

> ....

The trial court's amended order filed June 7, 1993, does not specifically stay arbitration. Instead, it declares Kitsmiller's exclusive remedy is a judgment enforcing its mechanic's lien in case 265. As we understand the amended order, the trial court reached that

conclusion because (a) paragraph 19.1 of the Contract (quoted *supra*) says it shall be governed by the law of the place where the project is located, and (b) Kitsmiller, in filing its mechanic's lien February 10, 1992, availed itself of that remedy. Additionally, as we understand the amended order, the trial court determined that Missouri's mechanic's lien statutes were not preempted by the FAA.

Both SDC and Kitsmiller treat the order as an order denying the arbitration sought by Kitsmiller and granting the permanent stay of arbitration sought by SDC. In the interest of accommodating the parties by deciding this appeal on the merits, we shall treat the order as one granting an application to stay arbitration (appealable per § 435.440.1(2), quoted *supra* ), without deciding whether it could have withstood appellate scrutiny had it been challenged as insufficient for that purpose.[4]

To address the merits in an orderly way, we begin by identifying the issues framed by Kitsmiller's first point (quoted *supra*) and SDC's response to it. Kitsmiller's first point maintains the FAA and Missouri's Uniform Arbitration Act mandate enforcement of paragraph 10.8 of the Contract, which requires arbitration of all claims or disputes between the parties arising out of or relating to the Contract or its breach.

■ In response, SDC presents three arguments supporting its contention that the trial court did not err in declining to enforce paragraph 10.8.[5] The first, in SDC's words is: "[Kitsmiller] has through its actions waived the arbitration provision and its elected exclusive remedy is through the mechanics lien action [case 265]."

In support of this contention, SDC cites *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 260–61 (Mo.App.W.D.1985), which holds, among other things, that repudiation or waiver of an arbitration provision in a contract occurs when a party disregards either a procedural or substantive condition imposed by the arbitration provision, such as by inaction or delay in enforcement of the arbitration right, or by a prior election to submit the dispute to a court. Amplifying that holding, *Village of Cairo* explains:

A repudiation results when conduct of a party is so inconsistent with the end of the arbitration clause as to indicate that the right has been abandoned. Inconsistency is found from conduct which prevents arbitration, or makes that recourse impossible,

4. Under § 435.440.1(1), an appeal may be taken from an order denying an application to compel arbitration made under § 435.355. *Brookfield R–III School District,* 845 S.W.2d at 104. As we have seen, Kitsmiller filed an application to compel arbitration in the trial court August 31, 1992, and an amended application to compel arbitration in that court September 8, 1992. As we understand the trial court's docket entry of September 10, 1992, those applications were denied. It appears Kitsmiller could have appealed from that ruling per § 435.440.1(1), referred to in the first sentence of this footnote. Had Kitsmiller done so, the motions of both sides for summary judgment, which came more than seven months later, would in all likelihood not have been filed. It is arguable that Kitsmiller, by failing to appeal from the September 10, 1992, order within the time allowed, should be barred from appealing from the amended order filed June 7, 1993. However, we have chosen to treat that order as one granting an application to stay arbitration, appealable per § 435.440.1(2), quoted *supra.* Nothing in the docket entry of September 10, 1992, purports to stay arbitration (unless one treats an order denying an application to compel

arbitration as an order granting an application to stay arbitration). Evidently, SDC did not treat it that way, as SDC continued to litigate the arbitration issue in the trial court by filing its motion of April 23, 1993, for summary judgment, presumably (though not literally) seeking an order staying arbitration. Taking the case as we find it—with no contention by SDC that Kitsmiller's failure to appeal from the September 10, 1992, docket entry bars Kitsmiller from the instant appeal—we shall proceed as set forth in the sentence where the reference to this footnote appears.

5. SDC's petition in the trial court pled sundry theories as to why paragraph 10.8 is unenforceable. SDC does not assert all of them in its brief. SDC, as respondent in this appeal, was not required to file a brief. *BCCLW/Casey, Inc. v. S.O. Gillioz Partners, Inc.,* 783 S.W.2d 174, 175 (Mo.App.S.D.1990). However, by doing so and briefing only the contentions it did, SDC abandoned—at least for the purpose of this appeal (which is all we need decide)—the contentions pled in the trial court but omitted from its brief. *Id.*

or which proceeds at all times in disregard of the arbitration clause.

685 S.W.2d at 261 [citations omitted].

■ Earlier, we set forth evidence indicating the Contract involved a transaction in interstate commerce. That evidence supports Kitsmiller's contention that the FAA applies to the Contract. Inasmuch as this appeal is by Kitsmiller from a summary judgment adverse to it, we review the record in the light most favorable to Kitsmiller. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376[1] (Mo. banc 1993). Consequently, we treat that evidence as true.

■ Where the FAA applies, a contention that a contractual right to arbitrate has been waived must be evaluated in light of federal policy which strongly favors arbitration. *McCarney v. Nearing, Staats, Prelogar and Jones,* 866 S.W.2d 881, 890[20] (Mo. App.W.D.1993). Although the right to arbitrate under the FAA can be waived, the facts of each case determine whether waiver has occurred. *Id.* at 890[21]; *Berhorst v. J.L. Mason of Missouri, Inc.,* 764 S.W.2d 659, 662[2] (Mo.App.E.D.1988). A finding that arbitration has been waived is not favored; there is a presumption against waiver. *McCarney,* 866 S.W.2d at 890[22]; *Berhorst,* 764 S.W.2d at 662[2].

■ A party seeking to establish waiver of a right to arbitrate must demonstrate that the alleged waiving party: (1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that right; and (3) prejudiced the party opposing arbitration by such inconsistent acts. *McCarney,* 866 S.W.2d at 890[23]; *Berhorst,* 764 S.W.2d at 662[3].

SDC maintains Kitsmiller waived the arbitration provision in that Kitsmiller "never presented its claim to the architect." To support that allegation, SDC directs us to "L.F. 288–289."

■ The record supplied us by the parties contains a legal file and a supplemental legal file. The legal file contains pages numbered 1 through 248. The supplemental legal file contains pages numbered 1 through 54. Nei-ther contains pages numbered 288 or 289. There is no transcript.

Rule 84.04(h), Missouri Rules of Civil Procedure (1993), requires that all statements of fact in a brief have specific page references to the legal file or the transcript. Because the pages referred to by SDC are nonexistent, we reject the allegation of fact. *Cf. State v. Garrett,* 282 S.W.2d 441, 442[1] (Mo. 1955).

■ Furthermore, as we have seen, the Contract states the "Architect" is SDC. Kitsmiller points out that Roger Allen Walter, employed by SDC as its "Director of Corporate Design," admitted in deposition that neither SDC nor its corporate planning department is a licensed or registered architect. Given these facts, we hold that even if Kitsmiller failed to present its claim to the "Architect" before demanding arbitration, such failure would not manifest an intent to waive the arbitration provision. Additionally, SDC has shown no prejudice therefrom.

Moreover, Kitsmiller directs us to a document indicating SDC delayed action on change order requests submitted by Kitsmiller several months prior to Kitsmiller's demand for arbitration. This is sufficient to support an inference that at least some components of Kitsmiller's claim were presented to SDC by the change order requests. Viewing the record favorably to Kitsmiller, as we must, we cannot say it demonstrates Kitsmiller never presented its claim to SDC before demanding arbitration.

For the above reasons, we find no merit in SDC's argument that Kitsmiller waived the arbitration provision by failing to present its claim to the "Architect."

■ SDC maintains there is a second basis for holding Kitsmiller waived the arbitration provision. SDC points out that such provision (paragraph 10.8 of the Contract) provides that notice of the demand for arbitration shall be filed within a reasonable time after the dispute arises. SDC says Kitsmiller failed to do so. Specifically, SDC asserts the dispute arose no later than October 21, 1991, when Kitsmiller withdrew from the project. Kitsmiller's demand for arbitration was dated February 11, 1992.

SDC cites no authority for its theory that this delay constituted a waiver by Kitsmiller of the arbitration provision. Furthermore, documents in the record show lawyers representing SDC and Kitsmiller were negotiating in an apparent effort to resolve the dispute as early as October 14, 1991. It should have been obvious to SDC that if the dispute was not resolved by negotiation, Kitsmiller would resort to either arbitration or litigation to resolve it. Moreover, SDC has failed to show it was prejudiced by Kitsmiller waiting from October 21, 1991, until February 11, 1992, to file its demand for arbitration with the American Arbitration Association. SDC's argument that Kitsmiller waived the arbitration provision by failing to demand arbitration within a reasonable time after the dispute arose is without merit.

■ There is a third reason, says SDC, for holding Kitsmiller waived the arbitration provision. SDC reminds us that Kitsmiller served notice of its intent to file a mechanic's lien and thereafter, on February 10, 1992, filed a mechanic's lien against the Grand Palace. Kitsmiller took these steps before filing its demand of February 11, 1992, for arbitration with the American Arbitration Association. Consequently, maintains SDC: "[Kitsmiller] elected to exert its rights through the Missouri Mechanic's Lien Statute and impose a lien on [SDC's] property. [Kitsmiller] can't have its cake and eat it too. It clearly chose the remedy it wanted to pursue and did not utilize arbitration."

SDC's contention is refuted by *McCarney*. There, a contract between a general contractor and an owner on a construction project contained an arbitration provision. A dispute ultimately arose and the general contractor filed a mechanic's lien against the property, and later filed suit against the owner without alleging in the petition that arbitration would be sought. Almost seven weeks after filing suit, the general contractor sought arbitration. The owner maintained the general contractor had waived the right to arbitrate. The Western District of this Court held otherwise. 866 S.W.2d at 890–91.

Here, Kitsmiller never instituted a suit to enforce the mechanic's lien it filed February 10, 1992, against the Grand Palace. Instead, in the demand of February 11, 1992, which Kitsmiller filed with the American Arbitration Association, Kitsmiller sought an award of $341,432.17, to be enforced as a judgment for a mechanic's lien.[6]

Kitsmiller made no effort to intervene in case 265, the mechanic's lien action brought by Builders Steel Co., Inc. Kitsmiller became a party to that action only because the trial court granted a motion by SDC that Kitsmiller be joined.

Unlike the general contractor in *McCarney*, Kitsmiller has never asked a court to resolve the dispute between it and SDC. The only requests Kitsmiller has made to a court are: (a) in the instant case—commenced by SDC, not Kitsmiller—where Kitsmiller asked the trial court to enforce the arbitration provision, and (b) in case 265 where Kitsmiller asked the trial court to stay that suit pending the outcome of arbitration between Kitsmiller and SDC or, alternatively, that any proceedings between Kitsmiller and SDC in that suit be stayed pending the outcome of arbitration, and for a mechanic's lien on the Grand Palace in the amount determined by arbitration.

SDC has shown no prejudice from the course Kitsmiller has chosen. Indeed, as noted earlier, SDC filed an answer February 21, 1992, to Kitsmiller's demand for arbitration with the American Arbitration Association. Since then, SDC has filed with the American Arbitration Association another answer, together with a counterclaim against Kitsmiller. The counterclaim maintains arbitration should be denied, but if arbitration occurs SDC is entitled to an award against Kitsmiller of at least $375,000. Thus, SDC is going to marshal and present evidence either in arbitration or litigation, and there is no indication that its ability to do so has been impaired in any way by Kitsmiller's procedural moves.

Inasmuch as the general contractor in *McCarney* (who filed suit after filing a mechanic's lien) was held not to have waived

---

6. We need not, and do not, express any opinion on whether a mechanic's lien can be enforced by a judgment entered per § 435.415 on an arbitration award.

arbitration, we hold Kitsmiller (who filed no suit after filing a mechanic's lien) did not waive arbitration.

The second argument presented by SDC in support of its contention that the trial court did not err in declining to enforce paragraph 10.8 of the Contract (the arbitration provision) is that Kitsmiller "failed to meet conditions precedent to arbitration by (a) failing to first present the dispute to the Architect, and (b) failing to demand arbitration within a reasonable time after the dispute had arisen."

■ This argument is essentially a renewal of SDC's contention that Kitsmiller waived the arbitration provision, a hypothesis we have rejected.

Additionally, regarding Kitsmiller's alleged failure to present the dispute to the "Architect," the instant case is analogous to *McCarney*. There, the owner fired the architect during the project and did not hire a replacement. When the general contractor demanded arbitration, the owner asserted the general contractor failed to comply with a condition precedent which required that the dispute be submitted to the architect before filing a demand for arbitration. 866 S.W.2d at 891[28]. The Western District of this Court found no merit in the owner's contention, pointing out that by firing the architect, the owner made compliance with the condition precedent impossible. *Id.*

Here, there was no separate architect to fulfill the role architects customarily play in construction projects. The "Architect" was SDC. Because of that, and because the record, viewed favorably to Kitsmiller, is sufficient to support an inference that at least some components of Kitsmiller's claim were presented to SDC in the form of change order requests before Kitsmiller demanded arbitration, we hold enforcement of the arbitration provision is not barred by Kitsmiller's alleged failure to present the dispute to the "Architect."

■ We likewise find no merit in SDC's premise that Kitsmiller failed to satisfy the condition precedent of demanding arbitration within a reasonable time after the dispute arose. Earlier, we considered and rejected SDC's contention that Kitsmiller failed to demand arbitration within a reasonable time. We adhere to that holding.

The third argument presented by SDC in support of its contention that the trial court did not err in declining to enforce the arbitration provision is: "The Missouri mechanic's lien statute, incorporated into the contract by the parties, is the exclusive remedy and is not preempted by the [FAA]."

SDC bases this argument on paragraph 19.1 of the Contract (quoted *supra*). That paragraph states the Contract shall be governed by the law of the place where the project is located. Citing *Clayton Greens*, 634 S.W.2d 462 (discussed earlier in this opinion), SDC maintains that under Missouri law, the equitable mechanic's lien action authorized by §§ 429.270–.300, RSMo 1986, is the exclusive remedy for resolving multi-party disputes arising from construction projects.

SDC's argument is answered by *McCarney*. There, as here, the owner asserted that under Missouri law, the equitable mechanic's lien action was the sole remedy in a dispute between the owner and the general contractor arising from a construction project. There, as here, the owner relied on *Clayton Greens* in support of that position. The Western District of this Court held:

> *Clayton Greens* ... stands for the proposition that a contract action and garnishment proceeding is stayed by an equitable lien action, but does not involve arbitration.
>
> ... Arbitration is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution without resort to the courts.... [The general contractor] and [the owner] have a right to arbitration without regard to whether there are multiple mechanics' liens creating the basis for an equitable mechanics' lien action.

866 S.W.2d at 892.

■ Furthermore, a Missouri statute cannot be applied to defeat the arbitration provision of a contract which is within the coverage of the FAA. *Bunge Corp.*, 685 S.W.2d at 839. Here, viewing the record favorably to Kitsmiller, we have proceeded

on the premise that the Contract involved a transaction in interstate commerce. Therefore, the FAA governs the arbitration issue unless the circumstances of this case bring it within an exception whereby the FAA is inapplicable.

SDC says the FAA does not apply because the instant case is like *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). There, the Supreme Court of the United States held a California statute was not preempted by the FAA where the parties agreed that their arbitration agreement would be governed by California law.

There is a fundamental difference between *Volt* and the position championed by SDC. In *Volt,* a California appellate court held the parties, by agreeing that their contract would be governed by the law of the place where the project is located, agreed that the California arbitration statutes would apply to the arbitration provision in their contract. The Supreme Court of the United States accepted that construction of the contract and held the parties were free to make that agreement, even though the contract involved interstate commerce. 489 U.S. at 475–79, 109 S.Ct. at 1254–56.

The Supreme Court explained in *Volt* that while the FAA preempts application of state laws which render arbitration agreements unenforceable, it does not follow that the FAA has preclusive effect in a case where the parties have chosen in their arbitration agreement to abide by state rules. *Id.* at 1252. The Supreme Court went on to say in *Volt* that where the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would be inimical to the policies underlying state and federal arbitration law because it would force the parties to arbitrate in a manner contrary to their agreement. *Id.*

■ Here, SDC does not argue that the parties agreed that the Missouri Uniform Arbitration Act would apply to the arbitration provision in the Contract. Instead, SDC argues that paragraph 19.1 of the Contract, which provides that it shall be governed by the law of the place where the project is located, means that the Missouri equitable mechanic's lien procedure overrides the arbitration provision. *Volt* does not support that argument, and *McCarney* defeats it.

Earlier, we held we would treat the trial court's amended order filed June 7, 1993, as an order granting the stay of arbitration sought by SDC. Viewing the record favorably to Kitsmiller, there is no basis upon which that order can be affirmed. As explained in this opinion, there is no merit in any of the grounds on which the trial court relied or any of the arguments for affirmance presented by SDC. We therefore reverse the amended order and remand this case to the trial court for further proceedings.[7]

We do not direct the trial court to order the parties to proceed with arbitration. In its amended order, the trial court found there were "unresolved issues of material fact" pertaining to the "purported" Contract. One of those issues, as pled in SDC's petition, is that the Contract is "void . . . or is revocable under the law or in equity."

■ It is evident from the trial court's amended order that the trial court did not reach the question of the validity of the Contract. That question is yet to be resolved. The trial court, not an arbitrator, is the one to resolve it. *St. Luke's Hospital v. Midwest Mechanical Contractors, Inc.,* 681 S.W.2d 482, 486–87 (Mo.App.W.D.1984). We express no opinion on the question (including the issue of whether SDC's challenge to the validity of the Contract is still viable[8]).

---

7. This holding makes it unnecessary to address Kitsmiller's second point, which assigns error in the granting of SDC's motion for summary judgment. By its third point, Kitsmiller maintains the trial court erred in refusing to grant Kitsmiller's motion for summary judgment, which requested an order compelling arbitration. As explained *infra* in this opinion, there is at least one unresolved issue for the trial court to address. Whether Kitsmiller is entitled to arbitration cannot be determined until the trial court resolves that issue.

8. Footnote 5, *supra.*

If the trial court finds the Contract void or, for some other reason, unenforceable, there is obviously no valid arbitration provision. Therefore, it may still be possible for SDC to prevail in its effort to resist arbitration. However, if the trial court finds the Contract is binding on the parties, Kitsmiller is entitled to an order compelling arbitration.

Although it is probably unnecessary, we point out that our holding does not affect case 265. The appeal here is from the trial court's amended order filed June 7, 1993, in the case identified in the second paragraph of this opinion. No issue regarding case 265 is presented in this appeal.

The trial court's amended order filed June 7, 1993, is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

FLANIGAN, P.J., and PREWITT, J., concur.