**ESTATE OF Leila Grace BURFORD by Pam BRUSE, a Personal Representative, Respondent,**

v.

**EDWARD D. JONES & CO., L.P., d/b/a Edward Jones, Appellant.**

**No. WD 60369.**

Missouri Court of Appeals, Western District.

June 11, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 25, 2002.

Application for Transfer Denied Sept. 24, 2002.

---

**1.** All rule references are to Mo. R.Crim. P.2002, unless otherwise indicated.

Craig T. Kenworthy, Kansas City, for appellant.

Robert E. Murphy, St. Joseph, for respondent.

Before LISA WHITE HARDWICK, Presiding Judge, JOSEPH M. ELLIS, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

In December 1998, Leila Grace Burford was declared incompetent by the Probate

Division of the Circuit Court of Mercer County, Missouri. Jay Hemenway and Irene Crum were appointed to serve as co-conservators of Ms. Burford's estate.

On February 10, 1999, the co-conservators executed a Customer Account Agreement with brokerage firm Edward D. Jones & Co. to establish an account on behalf of the Estate. On February 24, 1999, Ms. Burford died. Thereafter, a decedent's estate was opened on behalf of Ms. Burford, and Pam Bruse was appointed Personal Representative of the Estate of Leila Grace Burford, deceased.

On May 10, 2001, the Estate, by and through the personal representative, filed a petition in the Circuit Court of Jackson County against Edward D. Jones & Co. The petition alleged that Edward D. Jones & Co. was negligent and breached a fiduciary duty by failing to advise the co-conservators that sales of securities from the Estate's account ordered by Hemenway on February 16, 1999, would result in adverse tax consequences for the Estate. The petition further alleged that Edward D. Jones & Co. and its agent improperly invested the proceeds in a mutual fund at the direction of Hemenway on February 25, 1999.

On June 29, 2001, Edward D. Jones & Co. sent a letter to the Estate stating its intent to invoke the arbitration provisions of the account agreement in the resolution of the Estate's claim. On July 2, 2001, the Estate sent Edward D. Jones & Co. a letter claiming that there was no valid or enforceable arbitration agreement.

On July 13, 2001, Edward D. Jones & Co. filed a "Motion to Compel Arbitration and Stay Proceedings," claiming that the matter should be arbitrated in accordance with the provisions of the account agreement. On July 26, 2001, the Estate filed its suggestions in opposition to that motion, arguing that the co-conservators had

lacked authority to execute the account agreement because they had not been authorized by the court to do so and that the agreement was therefore void.

On August 6, 2001, the trial court denied Edward D. Jones & Co.'s motion to compel arbitration. The court found that the co-conservators had lacked the statutory authority to enter into the account agreement on behalf of the estate and that the agreement, and the arbitration clause contained therein, were therefore void. Edward D. Jones & Co. (hereinafter "Appellant") brings five points on appeal challenging the trial court's decision not to compel arbitration of Respondent's claims.

In its first point, Appellant claims that the trial court erred as a matter of law in declaring the account agreement invalid because the validity of the account agreement was an issue to be decided by the arbitration tribunal and not the court. Appellant contends that because the Estate challenged the validity of the entire agreement, rather than just the arbitration clause, the issue was one that should have been left to an arbitrator.

Contrary to Appellant's assertions, Missouri courts have held that under either the Missouri Arbitration Act or the Federal Arbitration Act "before a court may grant a party's motion to compel arbitration, it must decide whether the agreement containing the arbitration provision is valid and legally binding." *Hitcom Corp. v. Flex Fin. Corp.*, 4 S.W.3d 618, 620 (Mo.App. E.D.1999); *See also Silver Dollar City, Inc. v. Kitsmiller Constr. Co., Inc.*, 874 S.W.2d 526, 536 (Mo.App. S.D.1994); *St. Luke's Hosp. v. Midwest Mech. Contractors, Inc.*, 681 S.W.2d 482, 487 (Mo.App. W.D.1984). If the court finds that the contract containing an arbitration agreement is binding on the parties, the moving party is entitled to an

order compelling arbitration. *Silver Dollar City, Inc.*, 874 S.W.2d at 537. "If the trial court finds the Contract void or, for some other reason, unenforceable, there is obviously no valid arbitration provision." *Id.* The court is charged with making this initial determination because requiring a plaintiff to arbitrate where they have denied entering into the contract containing the asserted arbitration provision would be "inconsistent with the first principle of arbitration, that parties cannot be required to submit to arbitration disputes that they have not agreed to submit." *Hitcom,* 4 S.W.3d at 620 (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1142 (9th Cir.1991)).

▇▇▇▇ Accordingly, the trial court did not err in addressing the validity of the account agreement.[1] Point denied.

▇▇▇▇ In its second point, Appellant contends the trial court erred in denying its motion to compel arbitration because the broad language of the arbitration provision dictated that any controversy related to the agreement be addressed in arbitration. As noted *supra,* before an individual will be deemed subject to the dictates of an arbitration provision, the trial court must make the initial determination whether the individual ever entered into the contract containing that provision. *See Hitcom,* 4 S.W.3d at 619. The language of the arbitration provision is wholly irrelevant if the plaintiff never entered into the contract or agreed to submit to the arbitration provisions. Point denied.

In its third point, Appellant argues that the trial court erred as a matter of law in finding that the account agreement was void. Appellant contends that neither

1. In the argument portion of Appellant's reply brief, Appellant argues that the trial court erroneously determined that the contract was void rather than voidable, based upon the authority of the probate court granted by § 475.091 to ratify contracts entered into by conservators without court approval if the transaction is or was in the protectee's best interests, and that the validity of voidable contracts must be left to arbitration. Thus, Appellant attempts to assert a different claim of error.

" 'A reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review.' " *Martin v. McNeill,* 957 S.W.2d 360, 366 (Mo.App. W.D.1997) (quoting *State v. Williams,* 887 S.W.2d 769, 770–71 (Mo.App. S.D.1994)); *See also Distler v. Reuther Jeep Eagle,* 14 S.W.3d 179, 186 n. 1 (Mo.App. E.D.2000) (citing *Rule 84.04(e)* ). "Furthermore, a party cannot alter or add to its Points Relied On in its reply brief." *Helmig v. State,* 42 S.W.3d 658, 668 n. 3 (Mo.App. E.D.2001). Accordingly, Appellant's additional claim of error is not properly before this court.

We note *ex gratia,* however, that a voidable contract is "[a] contract that is valid, but which may be legally voided at the option of one of the parties." *Black's Law Dictionary* 1574 (6th Ed.1990). Section 475.091 provides that if a finding is made by the court that a transaction was or is beneficial to the protectee, the court has the discretion to approve, ratify, confirm and validate any transaction entered into by a conservator without the requisite prior court approval. Under this statute, the power to affect the validity of the agreement is not granted to either of the parties to the account agreement and instead rests with the court. Thus, even if Appellant were correct that the validity of voidable contracts should be left to arbitration, since neither of the parties to the account agreement has authority to void, ratify or otherwise affect the validity of the transaction, it cannot be deemed "voidable."

Furthermore, the court is granted the discretionary authority to ratify the agreement only after a finding has been made that the transaction was or is beneficial to the protectee. Absent such a finding, nobody has the authority to ratify a transaction entered into by a conservator without the requisite authorization by the court, and the transaction cannot be deemed anything other than void due to the conservator's lack of statutory authority to enter into such an agreement.

§ 475.130(5) nor § 475.190 precluded the co-conservators from entering into the account agreement and opening an account for the Estate. Appellant claims that the co-conservators had the authority to enter into the agreement even if they lacked the statutory authority to order the later transactions that occurred within the account.

The trial court found that the co-conservators lacked the authority to enter into the customer account agreement because they did not have the prior approval of the court to do so. The trial court held that, under both § 475.130.5 and § 475.190, the co-conservators were required to obtain the approval of the court before they could enter into the customer account agreement with Appellant.

Appellant argues that neither § 475.130.5 nor § 475.190 should be deemed to invalidate the customer account agreement. It contends that, while these statutory provisions might be implicated with regard to subsequent transactions that occurred within the account, they did not preclude the co-conservators from establishing the account or agreeing to the terms of the customer account agreement, including the arbitration clause. Accordingly, the issue before this court is whether the trial court properly found that the terms of the customer service agreement were such that the co-conservators lacked authority to enter into that contract under the provisions of § 475.130.5 and/or § 475.190.

Our review of the trial court's interpretation of the provisions of customer account agreement is *de novo*. *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo.App. W.D. 2001). " 'In interpreting a contract, we must use the plain, ordinary, and usual meaning of the contract's words and consider the whole document.' " *Id.* (quoting *Missouri Consol. Health Care Plan v. BlueCross BlueShield of Mo.*, 985 S.W.2d 903, 909 (Mo.App. W.D.1999)). "Where a written contract is unambiguous and complete on its face, parole evidence may not be introduced to vary or contradict the terms of the agreement." *Id.*

Similarly, statutory interpretation is a question of law, and our review of the trial court's interpretation of the relevant statutes is therefore *de novo*. *Carmack v. Missouri Dep't of Agric.*, 31 S.W.3d 40, 46 (Mo.App. W.D.2000). " 'The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.' " *Hampton v. Hampton*, 17 S.W.3d 599, 602 (Mo.App. W.D.2000) (quoting *Wheeler v. Board of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo. App. W.D.1996)).

We first address Appellant's claims related to § 475.130.5. That section provides, in relevant part:

A conservator of the estate has power, without authorization or approval of the court, to:

\* \* \*

(3) Sell, or agree to sell, chattels, choses in action and investment securities reasonably worth not more than one thousand dollars for cash or upon terms involving a reasonable extension of credit;

(4) Exchange, or agree to exchange, chattels, choses in action and investment securities for other such property of equivalent value, not in excess of one thousand dollars.

*§ 475.130.5.* The trial court found that the co-conservators exceeded their authority under § 475.130.5 by entering into the ac-

count agreement because over one million dollars worth of stock owned by Ms. Burford was placed into the account after it was created.

■ The trial court's application of § 475.130.5 was erroneous. The terms of the customer account agreement did not require the estate to sell or exchange any investment securities. Therefore, by agreeing to the terms of the customer account agreement, the co-conservators were not selling, exchanging, or agreeing to sell any investment securities. Any evidence related to account activity not addressed in the terms of the contract was parole evidence that should not have been considered in interpreting the terms of the agreement and whether the co-conservators had the authority to agree to those terms. *Helterbrand,* 48 S.W.3d at 658. Moreover, moving stock already owned by Ms. Burford into the account did not constitute a sale, agreement to sell, or an exchange of these investment securities. Accordingly, Sections 475.130.5(3) and (4) were not implicated by any of the terms of the customer account agreement and cannot be deemed to have precluded the co-conservators from entering into the customer account agreement.

■ However, while we agree that the trial court's application of § 475.130.5 was erroneous, the trial court properly found that the co-conservators lacked authority to enter into the agreement pursuant to § 475.190. Section 475.190.2 provides:

No investment, other than an investment (a) in the direct obligations of or obligations unconditionally guaranteed as to principal and interest by the United States or (b) in savings accounts and time deposits, including time certificates of deposit, in banking institutions to the extent such accounts or deposits are insured by the Federal Deposit Insurance Corporation or (c) in accounts of savings and loan associations to the extent such accounts are insured by the Federal Savings and Loan Insurance Corporation, shall be made without prior order of the court.

The customer account agreement contained a mandatory provision under which the co-conservators agreed that the estate would invest a minimum of $1,000 in the money market linked to the account. The trial court properly found that this investment did not fall within one of the exceptions contained in § 475.190.2 and, therefore, required prior court approval. Without obtaining a court order authorizing this investment, the co-conservators lacked the authority to accept the terms of the account agreement and open the account.

■ Consequently, the trial court did not err in finding that the co-conservators lacked the authority to execute the account agreement and in holding that the agreement was void. Where the contract containing the arbitration provision sought to be enforced is found to be void or otherwise unenforceable, there is no valid arbitration agreement and the parties will not be compelled to arbitrate the dispute. *Silver Dollar City,* 874 S.W.2d at 537. Point denied.

■ In its fourth point, Appellant contends that the trial court erred in ruling that the customer account agreement was void because the Estate did not produce any evidence to substantiate its claims that one of the co-conservators did not actually sign the agreement. And in Appellant's final point, it asserts that the trial court erred in failing to conduct an evidentiary hearing on the motion to compel arbitration to determine whether an agreement was entered into by the co-conservators and Appellant.

The judgment of the trial court does not reflect that the allegations related to the co-conservator's signature entered into its decision in any way. The findings of the court related solely to whether the co-conservators had the authority to enter into the account agreement on behalf of the Estate without prior court approval. As noted *supra,* the trial court properly found that the co-conservators lacked the authority to enter into the agreement without a court order pursuant to § 475.190.2. Points denied.

The judgment is affirmed.

All concur.