Andrew **KAGAN**, Respondent,

v.

**MASTER HOME PRODUCTS LIMITED and Smart Living Products, Inc., Appellants.**

No. ED 86574.

Missouri Court of Appeals, Eastern District, Division Four.

June 6, 2006.

Jerome F. Raskas, Peter H. Love, St. Louis, MO, for Appellant.

Stanley J. Wallach, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Master Home Products, Ltd. ("MHP") and Smart Living Products, Inc. ("SLP")(collectively referred to as "Defendants") appeal from the judgment denying their motion to dismiss Andrew Kagan's ("Plaintiff's") petition or stay the lawsuit pending arbitration. On appeal, Defendants argue the trial court erred by denying their motion because (1) the arbitration agreement is valid and enforceable in that the subject matter of the agreement falls within the scope of arbitration, and (2) the arbitration notification agreement of the Missouri Uniform Arbitration Act ("Missouri Act") does not apply to the agreement. We reverse and remand.

Plaintiff brought the instant action against Defendants.[1] In his petition, Plaintiff sought an accounting of royalties and a judgment for royalties he allegedly is entitled to receive under a contract with MHP concerning an invention. Plaintiff alleged he invented a device called "Mr. Misty." Mr. Misty is a humidification device that attaches to a conventional showerhead and disperses humidity using the shower's water supply. Plaintiff, a Missouri resident, alleged that in June 1997, he and MHP, an Illinois corporation, entered into a written royalty agreement. Under the royalty agreement MHP had an exclusive license to make, market, and sell any product within the scope of any patent maturing from the patent application that

---

1. MHP is an Illinois corporation which sells products in Missouri. SLP is an Illinois corporation and a wholly owned subsidiary of MHP. Plaintiff's claims against SLP derive from his claims against MHP. Plaintiff joined SLP on the basis that SLP and MHP allegedly commingled assets. The record reveals that SLP was not a signatory to the royalty agreement. However, because the claims against SLP derive from those against MHP, the SLP claims are subject to the agreement.

MHP was to submit. In consideration of the license, MHP agreed to pay Plaintiff royalties on products sold and to send Plaintiff quarterly written statements of the sales and amounts of royalty owed and payment of all royalties due. Paragraph 5 of the royalty agreement provides:

> For a period of two years from payment of the Royalty, we will keep regular records and books of account containing particulars adequate to determine the amount of Royalties. At reasonable times, such records and books shall be open to you for reasonable confidential inspection at our place of business. This inspection shall be solely to determine the amount of Royalties. Any adjustments to the Royalties shall be made at the next quarterly report. *Any disagreements as to Royalties shall be determined by final offer arbitration governed by the rules of the American Arbitration Association.*

[Emphasis added]. The royalty agreement also provides that it is governed by Illinois law.

In his petition, Plaintiff alleged that Mr. Misty sales began in March of 2001. Plaintiff alleged he received a number of royalty reports and royalty payments in 2001, 2002, 2003, and 2004, but claims he did not receive all of the reports to which he is entitled. Plaintiff alleged he hired accountants to inspect MHP's records as provided in paragraph 5 of the royalty agreement. Plaintiff's accountants performed an inventory of the Mr. Misty units in Chicago, Illinois and an audit of the records of Defendants. Plaintiff's accountants determined a deficit of $188.[2]

In his petition, Plaintiff requested an accounting of all sums received by Defendants and of all Mr. Misty units distributed and sold. Plaintiff also requested that the trial court appoint a third party to account for shipments and returns of the product, and to determine the amount of damages and payments due under the royalty agreement. Plaintiff requested the trial court to order MHP to bear the expenses of the third-party accounting.

Defendants moved to dismiss Plaintiff's petition in favor of arbitration pursuant to paragraph 5 of the royalty agreement which requires arbitration of "any disagreements as to Royalties." The motion stated that the arbitration provision is enforceable under applicable state law and the Federal Arbitration Act ("FAA") and that the issues of the lawsuit were properly within the arbitration clause. The motion sought dismissal or, alternatively, a stay of the suit pending arbitration pursuant to the agreement.

 Plaintiff filed a memorandum in opposition to Defendants' motion to dismiss. Plaintiff argued the agreement was unenforceable because it omitted the arbitration notification language required by Missouri law and further argued that his action seeking an accounting as to royalties did not constitute a "disagreement as to Royalties" and, therefore, was not arbitrable under the royalty agreement. Defendants filed a joint memorandum in support of their motion refuting Plaintiff's contentions. The trial court entered judgment denying the motion to dismiss. Defendants now appeal.[3]

---

**2.** This figure was based on an estimate that Plaintiff earned royalties of $5,180, at $1 per unit, but Defendants paid Plaintiff only $4,992.

**3.** While neither party raises the issue, we address whether Defendants may properly ap-

peal from the denial of a motion to dismiss. Generally, the trial court's denial of a motion to dismiss is not a final judgment that is appealable. *Clayco Const. Co., Inc. v. THF Carondelet Dev., L.L.C.*, 105 S.W.3d 518, 522 (Mo.App. E.D.2003). However, a motion to dismiss may be treated as a motion to compel

In their first point,[4] Defendants argue the trial court erred by denying their motions to dismiss or to stay the lawsuit pending arbitration because the arbitration agreement is valid and enforceable in that the subject matter of the agreement falls within the scope of arbitration. Specifically, Defendants contend that Plaintiff's petition, which seeks an accounting of royalties and damages for unpaid royalties, is a "disagreement as to Royalties" within the meaning of the arbitration agreement. We agree.

■ We review the trial court's denial of a motion to compel arbitration or to stay the case pending arbitration *de novo*. *Triarch Industries, Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. banc 2005). Whether a dispute is covered by an arbitration provision in a contract is a question of law. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). In ruling on a motion to dismiss or stay a lawsuit pending arbitration, a court must determine (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the specific dispute falls within the substantive scope of that agreement. *Id.* at 427–28. Furthermore, a "party resisting arbitration bears the burden of proving that the claims at issue

are unsuitable for arbitration." *Madol v. Dan Nelson Automotive Group*, 372 F.3d 997, 999 (8th Cir.2004)(*quoting Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

■ Here, the agreement evidences a transaction involving commerce. The royalty agreement was drawn up in Illinois, between an Illinois corporation and a Missouri resident, and mailed between states. The agreement involved marketing and sales of the Mr. Misty product throughout the United States. The FAA applies to this agreement because it affects commerce. The FAA favors arbitrability in the face of any doubts concerning the scope of arbitrable issues. *Tractor–Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 629 (Mo.App. E.D.1994).

■ The language in the royalty agreement can be interpreted to cover a lawsuit seeking an accounting of royalties and a judgment for unpaid royalties. Paragraph 5 specifies the manner by which royalties shall be reported, paid, and issues resolved. Paragraph 5 provides that MHP shall submit quarterly reports showing the amount of royalties with the payments and that the records of MHP shall be open "for reasonable confidential inspection" which

---

arbitration, and, under such circumstances, the trial court's denial of a motion to dismiss is appealable. *Id.* at 523. In *Mueller v. Hopkins & Howard, P.C.*, 5 S.W.3d 182, 186 (Mo. App. E.D.1999), the court held that a defendant's motion to dismiss, in which defendant alleged that the parties expressly agreed that any disputes would be settled by arbitration, sufficiently raised the arbitration issue. *Id.* Consequently, the court found the motion to dismiss was in substance a motion to compel, which was appealable pursuant to Section 435.440. *Id.* Section 435.440 provides that an appeal may be taken from an order denying an application to compel arbitration. Similarly, in *Mr. Mudd, Inc. v. Petra Tech, Inc.*, 892 S.W.2d 389, 390 (Mo.App. E.D. 1995), defendants filed a motion to dismiss a

breach of contract action, in which they claimed the alleged contract required plaintiff to submit any controversies or claims to arbitration. *Id.* The motion was denied. *Id.* On appeal, the court found the denial of defendants' motion to dismiss erroneous because the motion to dismiss sufficiently raised the arbitration issue before the trial court. *Id.* at 391. As in both *Mueller* and *Mr. Mudd*, the motion to dismiss in the instant case was "in substance" a motion to compel arbitration. Hence, the denial of the motion to dismiss is reviewable under Section 435.440.

4. Because Points I and III of Defendants' argument are essentially the same, we address them together as a single point.

shall be "solely to determine the amount of the Royalties." After specifying the manner of the reporting and verification of the amount of royalties, paragraph 5 then states that "any disagreement as to Royalties shall be determined by final offer arbitration governed by the rules of the American Arbitration Association." Therefore, the subject matter of the lawsuit clearly falls within the scope of the royalty agreement's arbitration provision.

■ Plaintiff further argues that the lawsuit did not concern a "disagreement as to royalties" because he was seeking an accounting. Plaintiff claims that there is not a disagreement as to royalties "unless or until Plaintiff knows if any disagreement as to royalties exists." We find this argument unpersuasive. A disagreement as to royalties is a prerequisite to establishing any right to accounting because an accounting, by definition, requires a disagreement over the amount owed. *White v. Mid–Continent Investments, Inc.,* 789 S.W.2d 34, 40 (Mo.App. W.D.1990). By seeking an accounting, Plaintiff acknowledges a disagreement over the amount owed.

We find *Mueller* instructive on when courts require parties to arbitrate even where an agreement fails to specifically refer to the issue in dispute. In *Mueller,* an employee sued an employer concerning an employment contract. *Id.* at 185. The employment agreement submitted to arbitration "[a]ny claim or controversy . . . arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions" of employee's employment. *Id.* The employee sued for a declaratory judgment, mandamus, breach of contract, conversion, breach of fiduciary duty, accounting, and corporate dissolution. *Id.* Finding that the

accounting count of the petition arose out of the contract and was covered by the arbitration provision, the court compelled it to arbitration. *Id.* at 188. Similar reasoning applies to the case at bar. Here, the arbitration agreement subjects all "disagreements as to Royalties" to final arbitration. Therefore, as in *Mueller,* any action in accounting is not separate and apart from an action concerning royalties that would be subject to arbitration.

In addition, Plaintiff claims it is important that the agreement calls for "final offer" arbitration,[5] as opposed to "conventional" arbitration. Plaintiff contends he cannot participate in "final offer" arbitration without first having an accounting. We are unpersuaded by Plaintiff's argument.

■ "Final offer arbitration" restricts the arbitrator to choosing the final offer made by one of the parties. Note & Comment, *Final Offer Arbitration: A Model for Dispute Resolution in Domestic and International Disputes,* 10 Am. Rev. Int'l Arb. 383, 384 (1999). It is designed to motivate each party to negotiate in good faith and attempt to compromise in order to create a final offer that the arbitrator will select as most reasonable. *Id.* at 384–385. In conventional arbitration, the arbitrator can choose either party's position *or* compromise between the two positions as its award. *Id.* at 387. In contrast, final offer arbitration limits the arbitrator to picking only one of the final offers as an award. *Id.*

That distinction is irrelevant to the instant case because the type of arbitration selected is not related to whether or not the parties have agreed to submit their disputes to arbitration. Here, pursuant to paragraph 5 of the agreement, the parties

---

**5.** These proceedings are also known as major league baseball arbitration.

agreed that any disputes as to royalties are subject to the arbitration provision.

Plaintiff's lawsuit is a disagreement as to what royalties Plaintiff is entitled. The dispute falls squarely under the arbitration clause of the agreement because Plaintiff seeks an accounting and an award of royalties. The trial court erred in not dismissing the action in favor of arbitration or, in the alternative, staying the action pending arbitration of the dispute before the American Arbitration Association.[6] Point granted.

 In their second point, Defendants argue the trial court erred by denying their motions to dismiss or to stay the lawsuit pending arbitration because the arbitration notification agreement of the Missouri Act does not apply to the agreement. We agree.

Before the trial court, Plaintiff opposed Defendants' motions arguing the agreement does not contain the "notice of arbitration provision" language of the Missouri Act.[7] Here, the lack of the "notice of arbitration provision" language does not render the arbitration provision at issue invalid because as paragraph 16 of the royalty agreement states that Illinois law applies, which contains no requirement that an arbitration agreement contains any notice language.[8]

 We recognize that generally parties may choose the state whose law will govern the interpretation of their contractual rights and duties. *Tri–County Retreading, Inc. v. Bandag Inc.*, 851 S.W.2d 780, 784 (Mo.App. E.D.1993). So long as the application of this law is not contrary to a fundamental policy of Missouri, we will honor the parties' choice of law provision. *Id.* Here, the parties agreed that Illinois law governs the royalty agreement. Illinois law requires arbitration in the instant disagreement about royalties. The trial court erroneously applied the Missouri Act to deny dismissal or stay of the suit pending arbitration.

 Even if Missouri law applied, the FAA applies to the agreement at issue and preempts the "notice of arbitration provisions" section of the Missouri Act. *Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 838–839 (Mo. banc 1985). The FAA has no notice provision similar to that in the Missouri Act. *Mr. Mudd, Inc.*, 892 S.W.2d at 391. Therefore, the notice provision was not necessary in the arbitration provision at issue because the FAA applied to the royalty agreement.

---

6. In their reply brief, Defendants represent that Plaintiff will be able during the arbitration process "to pursue information exchange, discovery and an *accounting* in any commercial arbitration, including 'final offer' arbitration." [Emphasis added.]

7. As set forth in Section 435.460, RSMo 2000:

 Each contract subject to the provisions of [Section] 435.350 to [Section] 435.470 shall include adjacent to, or above, the space provided for the signature of the statement, in 10 point capital letters, which reads substantially as follows: "THIS CONTRACT CONTAINS THE BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."

8. The Illinois Uniform Arbitration Act, 710 ILCS 5/1, provides:

 A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract, except that any agreement between a patient and a hospital or health care provider to submit to binding arbitration a claim for damages arising out of (1) injuries alleged to have been received by a patient, or (2) death of a patient, due to hospital or health care provider negligence or other wrongful act, but not including intentional torts, is also subject to the Health Care Arbitration Act.

The FAA applies to contracts involving interstate commerce. *Triarch Industries, Inc.*, 158 S.W.3d at 774. The United States Supreme Court interprets the phrase "involving commerce" to be equivalent to "affecting commerce." *Edward D. Jones & Co. v. Schwartz*, 969 S.W.2d 788, 793 (Mo.App. W.D.1998)(*citing Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274, 115 S.Ct. 834, 839, 130 L.Ed.2d 753, 766 (1995)). The phrase has been broadly interpreted by federal courts, which have found the interstate commerce nexus in cases where the contracting parties resided in different states, the U.S. Postal System was used, employees crossed state lines, or materials were transported across state lines. *Id.*

Because the disagreement about royalties falls within the arbitration agreement, the only action the trial court could take was to dismiss Plaintiff's motion. The trial court erred in denying the motion to dismiss or to stay the suit pending arbitration.

We reverse and remand with instructions to dismiss Plaintiff's petition and to compel arbitration.

NANNETTE A. BAKER, P.J., and SHERRI B. SULLIVAN, J., concur.