**PERFECTSTOP PARTNERS, L.P., et al., Respondents,**

v.

**U.S. BANK, Multi Service Corporation and Mark O'Connell, et al., Appellants.**

Nos. WD 66865, 66867.

Missouri Court of Appeals, Western District.

June 26, 2007.

Application for Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied Sept. 25, 2007.

Mark S. Carder, James R. Wyrsch, Co-Counsel, Kansas City, MO, for appellants U.S. Bank and Criswell.

J. Michael Grier, James M. Warden, Co-Counsel, Jennifer E. Shafer, Co-Counsel, Overland Park, KS, for appellants Multi Service Corporation and O'Connell.

Edward D. Robertson, Jr., Jefferson City, MO, Brett T. Votava, Co-Counsel, James R. Bartimus, Co-Counsel, Leawood, KS, for respondents.

Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Judge.

Appellants Multi Service Corporation ("Multi Service"), U.S. Bank National Association ("U.S.Bank"), Diane Criswell, and Mark O'Connell appeal from the trial court's orders on certain motions relating to a dispute with Respondents John J. Laughlin, PerfectStop, Inc. ("PerfectStop"), and PerfectStop Partners, L.P. ("PerfectStop Partners"). Specifically, Appellants assert that the trial court erred in (1) denying their motion to dismiss or, in the alternative, stay the Missouri litigation pending an arbitration in Texas; and (2) granting Respondents' motion to stay the Texas arbitration. For the following reasons, we reverse and remand with instructions.

In March 2004, Respondent PerfectStop Partners[1] was formed in Texas. The purpose of PerfectStop Partners was to own, operate, and manage the continued development of an Internet-based system to be used in the aviation industry to track expenses and coordinate trip logistics (the "PerfectStop System"). Appellant Multi Service[2] was a Missouri corporation that owned and operated a non-Internet-based service system in competition with the PerfectStop System. Sometime in 2004, Multi Service entered into negotiations with PerfectStop Partners, PerfectStop, and Laughlin to create a strategic partnership to combine Multi Service's customer base with PerfectStop's technology. Three documents resulted from these negotiations, including a preliminary letter of intent (the "LOI") and two formal agreements, which are the subject of this appeal. Several months after the agreements were executed, U.S. Bank purchased Multi Service's aviation business, including its interest in PerfectStop Partners.[3]

On November 17, 2004, PerfectStop Partners, PerfectStop, Laughlin, and Multi Service executed a Partnership Interest Purchase Agreement (the "PIPA") to formalize the terms of the LOI. In addition to setting forth certain terms and covenants between the parties to the agreement, the PIPA indicates that the limited partnership agreement of PerfectStop Partners will be amended to reflect certain terms of the PIPA. The PIPA has one paragraph

addressing the procedures and law in the event of any disputes:

24. *Governing Law.* This Agreement, the rights and obligations of the parties hereto and their successors and assigns hereunder, shall be interpreted, construed, and enforced in accordance with the laws of the State of Missouri, excluding any conflict-of-laws rules or principle that might refer the governance or construction of this Agreement to the law of another jurisdiction. Any action brought by any party in relation to this Agreement shall be brought in a court of appropriate jurisdiction in Jackson County, Missouri.

The next day, PerfectStop, Multi Service, Laughlin and the other limited partners of PerfectStop Partners executed an amended limited partnership agreement (the "ALPA") concerning Perfect Stop Partners. In addition to setting forth the terms of the limited partnership in general, the ALPA refers to the rights and duties of Multi Service in numerous places and restates certain provisions of the PIPA. The ALPA has two separate paragraphs addressing the procedures and law in the event of disputes:

*Section XI.1 Arbitration.* Upon the request of any party, whether made before or after the institution of any legal proceeding, any action, dispute, claim, or controversy of any kind now existing or hereafter arising between the parties in any way arising out of or in connection with this Agreement shall be resolved

1. Respondent John J. Laughlin is the sole shareholder of PerfectStop, which is the general partner and manager of PerfectStop Partners. Laughlin and others not involved in this appeal comprised the limited partners of PerfectStop Partners.

2. Appellant Mark O'Connell was the president and Appellant Diane Criswell was the vice-president of Multi Service.

3. After the execution of the formal agreements, Appellant Diane Criswell acted as Multi Service's representative on the board of PerfectStop Partners. After U.S. Bank bought Multi Service, Criswell continued as U.S. Bank's representative on the board.

by binding arbitration, administered by the American Arbitration Association ("AAA") in accordance with the terms of Exhibit B, the Commercial Arbitration Rules of the AAA (or other Rules of the AAA selected by the General Partner), and, to the maximum extent applicable, the Federal Arbitration Act.

*Section XI.6 Governing Law.* This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas (excluding its conflicts of law rules).

A dispute subsequently arose, and Respondents filed suit against Appellants in Jackson County, Missouri, alleging seven causes of action and asserting jurisdiction under the "governing law" provision in the PIPA. Appellants U.S. Bank and Multi Service filed a formal demand for arbitration in Texas shortly thereafter, asserting that the claims in Respondents' petition are subject to arbitration and alleging additional claims against Respondents under the PIPA and the ALPA.

Appellants did not file an answer to the Missouri suit against them but, instead, filed a timely motion to dismiss or, in the alternative, stay the action pending the outcome of the Texas arbitration. They alleged that Respondents' claims against them ultimately arose from the ALPA and are subject to arbitration. They further alleged that Missouri law and the Federal Arbitration Act ("FAA") require that the Missouri action be dismissed or stayed. Respondents opposed the motion to dismiss or stay, arguing that their claims

against Appellants arose solely from the PIPA and are not covered by the ALPA's arbitration provision but by the PIPA's forum selection clause. Respondents also filed a separate motion to stay the Texas arbitration pursuant to § 435.355 [4] of the Missouri Uniform Arbitration Act. The arguments by both sides are substantially the same regarding both motions, except that Appellants also challenged the trial court's jurisdiction in their response to the motion to stay the arbitration.

The trial court determined that no oral arguments were necessary on the motions. The court subsequently entered its order staying the Texas arbitration [5] and refusing to dismiss or stay the Missouri action. This appeal follows.

Appellants assert four points of error. The first two points relate to the trial court's order granting Respondents' motion to stay the Texas arbitration. The third and fourth points relate to the court's order denying Appellant's motion to dismiss or stay the Missouri litigation pending the outcome of the Texas arbitration. Respondents challenge this Court's jurisdiction to review the latter two points, but they agree that we have jurisdiction over the first two points.

 " 'The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists.' " *Jackson County v. McClain Enters., Inc.,* 190 S.W.3d 633, 637 (Mo.App. W.D.2006) (quoting *Dunn Indus. Group, Inc. v. City*

---

**4.** All statutory citations are to RSMo 2000 unless otherwise noted.

**5.** Respondents claim that they requested and the court granted a stay of the arbitration only as to the non-ALPA-based claims, leaving the arbitration free to proceed as to the ALPA-based claims. However, the record does not reflect this distinction. The court's order states only that "Plaintiffs' Motion to Stay

Arbitration is GRANTED." Respondents did not qualify their request for a stay at any point in their motion. Starting with the first paragraph, Respondents consistently requested a stay of the entire arbitration, stating repeatedly that "this Court should stay the arbitration proceeding initiated by U.S. Bank" without any qualifying language.

*of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003)). "Because our jurisdiction is predicated on that of the trial court, if the trial court lacked jurisdiction over this action, then any judgment entered thereon would be void, depriving us of jurisdiction except to reverse the judgment and remand the cause for dismissal by the trial court." *Gov't e-Management Solutions, Inc. v. Am. Arbitration Ass'n*, 142 S.W.3d 857, 860 (Mo.App. E.D.2004). "The question of the circuit court's jurisdiction is an issue of law and, thus, our review is *de novo.*" *State ex rel. Brantingham v. Grate*, 205 S.W.3d 317, 319 (Mo.App. W.D. 2006) (citing *McCoy v. Caldwell County*, 145 S.W.3d 427, 428 (Mo. banc 2004)).

Missouri has adopted the Uniform Arbitration Act (the "UAA"), which is set forth in §§ 435.350 through 435.470. Respondents brought their motion to stay the Texas arbitration under § 435.355, which allows a party to file a motion to compel or to stay arbitration in the event that the parties disagree as to whether a dispute is subject to arbitration.[6] Section 435.440 sets forth the orders from which immediate appeals are allowed. "An order granting an application to stay arbitration made under subsection 2 of section 435.355" is appealable under § 435.440.1(2).

 Appellants assert in their first point that the trial court lacked jurisdiction to grant Respondents' motion to stay the arbitration under the UAA because the arbitration is located in another state. They rely primarily on this Court's decisions in *H.T.I. Corp. v. Lida Manufacturing Co.*, 785 S.W.2d 110 (Mo.App. W.D. 1990), and *Teltech, Inc. v. Teltech Communications, Inc.*, 115 S.W.3d 441 (Mo.App. W.D.2003).

In *H.T.I.*, the parties entered into a sales contract containing an arbitration agreement calling for arbitration in New York City and governed by New York law. 785 S.W.2d at 111. A dispute arose, the respondent issued a demand for arbitration in New York City, and the appellant filed a motion in Cole County to stay the arbitration pursuant to the UAA. *Id.* The trial court dismissed the motion for lack of jurisdiction, and this Court affirmed the dismissal on appeal. *Id.* The appellant in *H.T.I.* argued, as do Respondents in the case at bar, that § 435.430 "does not deprive the Missouri courts of jurisdiction in deciding whether or not an agreement exists in the first place under the general principles of contract interpretation." *Id.* at 112. This Court rejected the appellant's contention, holding that jurisdiction under the UAA, and specifically to determine the validity of an arbitration clause, "arises out of the jurisdictional mandate of § 435.430." *Id.*

In coming to this conclusion, we examined the text of §§ 435.430 and 435.355 and stated that "[s]ection 435.430 confers

---

**6.** Section 435.355 provides:

 1. On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

 2. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

jurisdiction under §§ 435.350 to 435.470." *Id.* at 113. Section 435.430 states:

> 435.430. **Court, jurisdiction.**—The term "court" means any court of competent jurisdiction of this state. The making of an agreement described in section 435.350 [7] providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under sections 435.350 to 435.470 and to enter judgment on an award thereunder.

*H.T.I.*, 785 S.W.2d at 112.

> Specifically, a question as to whether or not there exists an agreement to arbitrate is handled under § 435.355 which states in part:

> \* \* \*

> 2. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, ***shall be forthwith and summarily tried and the stay ordered if found for the moving party.*** If found for the opposing party, the court shall order the parties to proceed to arbitration.

*Id.* at 113. We concluded, "Obviously, since Missouri is not the state in which arbitration is specified, Missouri is without jurisdiction to proceed." *Id.*

In *Teltech*, this Court relied heavily on *H.T.I.* in determining whether the trial court had jurisdiction over a motion to compel arbitration and stay litigation. 115 S.W.3d at 442–43. As in *H.T.I.*, the parties had entered into an arbitration agreement calling for arbitration in another state (Kansas) and providing that the

agreement shall be governed by the law of that state. *Id.* at 442. We held that "the courts of this state lack jurisdiction to compel arbitration because the arbitration agreement provides for arbitration in the state of Kansas." *Id.* Accordingly, we "affirm[ed] the trial court's judgment denying appellants' motion to compel and dismiss[ed] the appeal for lack of jurisdiction." *Id.* at 445. We stated:

> To compel arbitration or stay pending proceedings under the UAA, ... a Missouri court must have jurisdiction over the arbitration matter. *See H.T.I. Corp. v. Lida Manufacturing Co.*, 785 S.W.2d 110, 112 (Mo.App. W.D.1990) (a court must be one of proper jurisdiction to entertain an application to stay arbitration proceedings under the UAA). ***The source of the court's jurisdiction to act in arbitration matters is wholly derived from the UAA. Under the UAA, jurisdiction hinges upon the place specified for arbitration in the arbitration agreement.***

*Id.* at 442–43 (internal quotation and footnote omitted) (emphasis added); *see also Gov't e-Management Solutions*, 142 S.W.3d at 860–61.

Despite the clear language in *H.T.I.* and *Teltech* concerning the jurisdictional limitations of § 435.430, Respondents claim that those cases are inapplicable to the case at bar. First, they argue that the court's authority to stay an arbitration is different from its authority to "enforce" an arbitration agreement, which is expressly limited by § 435.430 to agreements provid-

---

7. Section 435.350 provides, in pertinent part: A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . .

ing for arbitration in Missouri,[8] and that *Teltech* and *H.T.I.* only addressed enforcement. Respondents insist that § 435.430's limitation on the court's jurisdiction applies only if the court is asked to "enforce" the agreement, *i.e.*, to compel arbitration (as in *Teltech*) or determine the validity of the agreement (as in *H.T.I.*). They assert that staying an arbitration where there is no challenge to the validity of the agreement itself, as in the case at bar, is a *refusal* to enforce the arbitration agreement and is not encompassed under § 435.430's jurisdictional limitation.

Second, Respondents argue that *H.T.I.*, *Teltech*, and *Government e–Management Solutions* are wholly distinguishable on the facts because they did not address the specific situation at bar, where the parties entered into two contemporaneous agreements with different dispute resolution and governing law clauses. They contend that, under these circumstances, § 435.355 requires the Missouri courts to determine the applicability and scope of the agreement without the arbitration clause (the PIPA). They assert that the PIPA's designation of Missouri as the forum for disputes "in relation to" that agreement and choice of Missouri law override the ALPA's arbitration provision. They insist

that, therefore, the PIPA and the UAA require the trial court to determine whether the claims are "in relation to" the PIPA to ensure that the parties are not forced to arbitrate disputes that they did not agree to arbitrate.[9]

■ We reject each of Respondents' arguments. Respondents concede that the controlling issue in this case is whether the ALPA's admittedly valid arbitration clause requiring arbitration in Texas applies to the PIPA and that there is no way to resolve this question without looking to *both* agreements. *H.T.I.* and *Teltech* clearly hold that *any* questions concerning the applicability of an arbitration agreement calling for arbitration in another state are to be left to the determination of the courts in the jurisdiction where the arbitration is located. "Under [§ 435.430], jurisdiction is conferred on this court only under agreements providing for arbitration in this state.... Thus, *all questions arising in the matter*, including whether or not there is an agreement, are questions for the [other state's] courts and not for the Missouri courts." *H.T.I.*, 785 S.W.2d at 111. "[A] court must be one of proper jurisdiction *to entertain an application* to stay arbitration proceedings under the UAA." *Teltech*, 115 S.W.3d at 442 (sum-

---

8. *See Gov't e-Management Solutions,* 142 S.W.3d at 861:

> The statute speaks in terms of jurisdiction to enforce an agreement and to enter a judgment or award thereunder. This language has been held to include jurisdiction to determine the validity of the arbitration clause and whether it is binding on a non-party to the agreement, *H.T.I. Corp.,* 785 S.W.2d at 112, and to compel arbitration or stay pending court proceedings. *Teltech,* 115 S.W.3d at 442.

9. Respondents mistakenly rely on *Kagan v. Master Home Products Ltd.,* 193 S.W.3d 401 (Mo.App. E.D.2006), for the proposition that the trial court had jurisdiction to determine whether the claims are arbitrable. In *Kagan,*

a Missouri resident and an Illinois corporation entered into an agreement containing an arbitration provision that specified that Illinois law governed the agreement but did not specify a location for the arbitration. 193 S.W.3d at 403–04. Thus, the limitation on the court's jurisdiction set forth in § 435.430 was not triggered; indeed, the court did not even discuss its jurisdiction to determine the arbitrability of the claims. Moreover, the *Kagan* court ruled *in favor* of arbitration in reversing the trial court's decision and remanding with instructions to dismiss or stay the litigation pending arbitration. *Id.* It reiterated the general rule that "[t]he FAA favors arbitrability in the face of any doubts concerning the scope of arbitrable issues." *Id.*

marizing the holding in *H.T.I.*) (emphasis added). Despite Respondents' attempts to recharacterize it, their argument that the ALPA's arbitration provision does not apply to the PIPA is essentially an argument concerning "whether or not there is an agreement." *H.T.I.*, 785 S.W.2d at 111. Because any arbitration must take place in Texas, the trial court did not even have jurisdiction to "entertain" their application to stay the Texas arbitration, let alone determine the arbitrability of any claims asserted. *Teltech*, 115 S.W.3d at 445. The fact that there are two separate agreements does not change this conclusion where it is undisputed that it is impossible to determine whether the clause applies without looking at both agreements. Although Respondent cites two cases in which courts determined whether an arbitration provision in one agreement applied to a separate agreement between the parties, neither case is on point.[10] Thus, whatever merit there may be in Respondents' arguments that the trial court correctly determined the arbitrability of the claims, such arguments must be directed to a Texas court or arbitrator. Missouri courts do not have jurisdiction under the UAA to determine the arbitrability of the parties' claims or to stay the Texas arbitration.

■ Respondents next argue that the trial court was authorized to stay the Texas arbitration under the FAA even if it was not authorized to do so under the UAA. The parties agree that the FAA applies to their agreements; however, Respondents' argument fails because the par-

ties expressly agreed that the ALPA is governed by the laws of Texas.[11] In *Teltech*, we rejected the argument that the FAA authorized a stay where the UAA did not because the agreement at issue expressly stated that it was governed by the laws of Kansas. *Id.* at 445. "[T]he FAA does not preempt state law in a case where the parties have expressly agreed that any arbitration disputes will be governed by state law." *Id.* (citing *Volt Info. Sciences., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 470, 477–79, 109 S.Ct. 1248, 1251, 103 L.Ed.2d 488 (1989)); *cf. Lester Schwab Katz & Dwyer v. Yukevich*, 167 Misc.2d 1004, 641 N.Y.S.2d 505, 507 (N.Y.Sup.Ct.1996) ("[T]his court finds that the agreement is governed by the FAA based on: 1) the **absence** of a choice of law provision and 2) that the ... agreement comes within the scope of the Commerce Clause ....") (emphasis added). Accordingly, the FAA does not preempt the UAA in the case *sub judice*, and the jurisdictional limitations of § 435.430 apply.

■ Finally, Respondents assert that the trial court had the authority to stay the Texas arbitration under its inherent power to control its docket. This argument also has no merit. "The source of the court's jurisdiction to act in arbitration matters is wholly derived from the UAA." *Teltech*, 115 S.W.3d at 442 (internal quotation omitted). Moreover, the inherent power of the court is only to control its **own** docket, *see Shirrell v. Mo. Edison Co.*, 535 S.W.2d 446, 450 (Mo. banc 1976), not the proceedings of any other forum, let

---

**10.** In *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir.2004), a Massachusetts federal court addressed the issue under the FAA, which does not contain a similar limitation on the court's jurisdiction but confers jurisdiction over transactions involving interstate commerce. *Id.* at 6–11. In *Dunn*, 112 S.W.3d 421, the Missouri Supreme Court addressed the issue where the proceed-

ings all took place or would take place within the state of Missouri. *Id.* at 427.

**11.** Even if we looked to the PIPA's dispute resolution provision, the parties also expressly agreed that it is governed by state law, specifically, Missouri law. Thus, the same analysis controls.

alone those in another state. None of the cases cited by Respondents hold otherwise.[12]

For the reasons discussed above, the trial court's order granting the stay of arbitration is void for lack of jurisdiction and must be reversed. Because the trial court lacked jurisdiction to stay the Texas arbitration, we also lack jurisdiction on this issue. *Gov't e-Management Solutions*, 142 S.W.3d at 860. However, this Court has previously ordered litigation stayed pending arbitration "as a matter of comity" even though we dismissed the appeal for lack of jurisdiction. *Teltech*, 115 S.W.3d at 442.

> Although such a stay is unusual, it is warranted given the unusual facts of this case.... [T]he general rule [is] that foreign proceedings must have been commenced before the proceedings sought to be stayed in the forum state, but ... under particular circumstances even a previously commenced action at the forum may be stayed pending the determination of issues in a foreign action subsequently commenced.

*Id.* at 445 (internal citation and quotation marks omitted). In this case, it seems likely that several counts of Respondents' petition will be found to have arisen exclusively by virtue of the PIPA and to be subject to the Missouri court's jurisdiction. Accordingly, based on the same rationale as in *Teltech*, we believe the facts of this case also warrant a stay of the Missouri litigation pending the Texas court or arbitrator's determination of whether the claims arose from the ALPA or the PIPA and whether the ALPA's arbitration provision applies to any PIPA-based claims. Point I is granted.

Appellants' second point, in which they assert that even if the trial court had jurisdiction, it erred in staying the Texas arbitration because it failed to enforce a valid arbitration agreement, is moot by virtue of our disposition of Point I. Since we are directing the trial court to stay the Missouri litigation as a matter of comity, we need not address Appellants' third and fourth points, relating to the trial court's denial of their motion to dismiss or stay the litigation pending arbitration.

The trial court's order granting Respondents' motion to stay the arbitration is reversed, and the case is remanded with instructions to stay the action pending the Texas court or arbitrator's determination as to the arbitrability of the claims asserted by Respondents in their Missouri petition.

All concur.

---

**12.** *See Landis v. American Water Works & Elec. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *State ex rel. Great American Ins. Co. v. Jones*, 396 S.W.2d 601, 605 (Mo. banc 1965); *Ryan v. Campbell* *Sixty–Six Express, Inc.*, 365 Mo. 127, 276 S.W.2d 128, 130–31 (Mo. banc 1955); *Michelson v. Citicorp Nat'l Servs., Inc.*, 138 F.3d 508 (3rd Cir.1998).