### Gina FIORDELISI, Appellant,

v.

### MT. PLEASANT, LLC and Bart Perry, Respondents.

### No. ED 89627.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied
June 24, 2008.

Jay L. Kanzler, Jr., St. Louis, MO, for appellant.

Ted F. Frapolli, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Presiding Judge.

The plaintiff homeowner, Gina Fiordelisi, appeals the judgment of the Circuit Court of St. Louis County confirming the arbitration award entered on her claims against the defendant contractor, Mt. Pleasant, LLC. The homeowner sued the contractor for breach of contract, negligence, intentional misrepresentation, and establishment of a constructive trust in connection with the parties' contract for construction work to be performed by the contractor on the homeowner's residence.

Because we conclude that the homeowner implicitly affirmed the contract and sought damages for the contractor's non-compliant work, we hold that her misrepresentation claim was arbitrable pursuant to the parties' arbitration agreement. Thus, the trial court did not err in confirming the arbitration award. We affirm the trial court's judgment.

*Facts*

In July 2004, the contractor and the homeowner executed a contract for the contractor to perform certain remodeling work on the homeowner's residence and to construct an addition to the house. The contract included a clause, which provided for arbitration of certain disputes.

> Settlement of Disputes. In the event of any dispute arising hereunder as to whether the work complies with this Contract and the Drawings or whether payment is properly due and the same is not settled within ten (10) days, then either party may request that the dispute be submitted for decision to three arbitrators, one of whom shall be chosen by the [Home] Owners, and one by the Contractor. The said two arbitrators shall choose a third arbitrator and the parties shall proceed with arbitration in accordance with the rules and procedures of the American Arbitration Association and the provisions of the Missouri Uniform Arbitration Act.

Disputes arose between the parties, and the homeowner ultimately sued the contractor for breach of contract, negligence, intentional misrepresentation, and establishment of a constructive trust. The homeowner also sued the contractor's owner, Bart Perry, for intentional misrepresentation, establishment of a constructive trust, and defamation.[1]

On the misrepresentation claim, the petition alleged, *inter alia*, that the contractor and Perry made false statements to the homeowner that the company was bonded, licensed, and insured and that the homeowner reasonably relied on these statements in entering the contract with the contractor. The homeowner also alleged

---

1. The homeowner eventually dismissed the three counts against Perry, and he is not a party to this appeal.

that Perry falsely represented that the City of Glendale had inspected the building and framing on the home addition, causing the homeowner to make an advance payment not required by the contract. The homeowner's petition sought actual and punitive damages on the misrepresentation count, including damages for emotional distress and mental anguish. The homeowner did not seek to rescind the contract.

The defendants sought to compel arbitration pursuant to the contract. The trial court ordered arbitration of all of the homeowner's claims against the contractor, but not those against Perry individually because Perry was not a party to the contract. The arbitrator found that the homeowner had breached the contract with the contractor, but nonetheless awarded her "$19,287.59 for work billed and paid under the contract that was not performed in a good and workmanlike manner." [2] The award did not mention the homeowner's misrepresentation claim, and the arbitrator denied "[a]ny and all other claims not specifically mentioned in this Award." The trial court confirmed the arbitration award and entered the award as a judgment as to all counts against the contractor. The homeowner now appeals.

## Discussion

In her point relied on, the homeowner challenges both the order compelling her to arbitrate her intentional misrepresentation claim against the contractor and the judgment confirming the arbitration award. We note as a preliminary matter that an order compelling arbitration is not appealable, *McCarney v. Nearing, Staats, Prelogar and Jones*, 866 S.W.2d 881, 887 (Mo.App. W.D.1993), although a court's judgment confirming the arbitration award may be appealed, section 435.440.1(3) RSMo. (2000).[3] Therefore, we review the homeowner's claim of error as one challenging confirmation of the arbitration award because the parties' dispute was not arbitrable under their agreement.

In one point on appeal, the homeowner contends that her misrepresentation claim fell outside the scope of the parties' arbitration agreement. She argues that the alleged misrepresentations were not "dispute[s] arising [under the contract] as to whether the work complies with this Contract and the Drawings or whether payment is properly due," and thus the disputes were not among those she had agreed to arbitrate. The homeowner asserts that the misrepresentation claim is independent of the contract's terms and does not require reference to the contract for its resolution. To support her assertion, she maintains, first, that the false statements that the contractor was bonded, licensed, and insured pre-dated the contract and induced her to enter the contract and, second, that the false statements about the city inspection caused a delay in discovering the non-conforming work and induced her to make an advance payment not required under the contract.

The contractor counters that the heart of the homeowner's misrepresentation claim concerned the contractor's work and

2. It appears that the parties did not follow the arbitrator-selection process set forth in the agreement to arbitrate. The briefs and record are silent on this issue.

3. Section 435.440.1 RSMo. (2000) provides that an appeal may be taken from an order denying an application to compel arbitration, an order granting an application to stay arbitration, an order confirming or denying confirmation of an award, an order modifying or correcting an award, an order vacating an award without directing a rehearing, and a judgment or decree entered pursuant to the provisions of the Uniform Arbitration Act. All Missouri statutory references are to RSMo. (2000).

the homeowner's alleged payment of sums not due. The contractor points to the averments contained in the homeowner's petition, arguing that they actually complain of work that failed to conform to the contract and drawings and payments that the homeowner made. The contractor contends that none of the allegations have any meaning without reference to the contract or drawings and therefore are intrinsically linked to the contract.

### Standard of Review

■ "When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006). Missouri contract law applies to determine whether the parties entered a valid agreement to arbitrate disputes. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 856 (Mo. banc 2006). Whether a dispute is arbitrable is a question of law, which we review *de novo. Id.; Tallmadge ex rel. Tallmadge v. Beverly Enterprises–Missouri, Inc.,* 202 S.W.3d 47, 49 (Mo.App. E.D.2006).

### Choice of Law

■ We must first determine whether the Federal Arbitration Act (FAA), 9 U.S.C. sections 1–16, applies to this case or whether Missouri's Uniform Arbitration Act, sections 435.012–435.470, applies. The FAA applies to contracts involving interstate commerce. *Kagan v. Master Home Products Ltd.,* 193 S.W.3d 401, 408 (Mo.App. E.D.2006). The U.S. Supreme Court has interpreted the phrase "involving commerce" as equivalent to "affecting commerce." *Id.* The federal courts have broadly interpreted the phrase "involving commerce" and have found involvement

with interstate commerce where the parties resided in different states, the parties used the U.S. Postal System, employees crossed state lines, or materials were transported across state lines. *Id.* The FAA creates substantive law, which may be enforced in state courts, and state courts must apply federal law in cases where the arbitration clause falls within the FAA. *Sitelines, L.L.C. v. Pentstar Corp.,* 213 S.W.3d 703, 706 (Mo.App. E.D. 2007).

■ The record here is silent concerning the possible applicability of the FAA, and the parties agreed at oral argument that the Missouri Arbitration Act applies. In any event, we conclude that the Missouri Arbitration Act applies here, rather than the FAA, even if the parties' contract were determined to "involve commerce." The parties' arbitration clause states that "[T]he parties shall proceed with arbitration in accordance with the rules and procedures of the American Arbitration Association and the provisions of the Missouri Uniform Arbitration Act." While the FAA preempts contrary provisions of state law in cases involving interstate commerce, the FAA does not preempt state law in cases where the parties have expressly agreed that state law will govern arbitration proceedings. *Teltech, Inc. v. Teltech Communications, Inc.,* 115 S.W.3d 441, 445 (Mo. App. W.D.2003). *See also Volt Info. Sciences, Inc. v. Bd. of Tr. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 470, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (holding that application of the California arbitration statute was not preempted by the FAA where the parties agreed that California law would govern arbitration). In view of the parties' express agreement requiring that arbitration proceed in accordance with Missouri law, we hold that the Missouri Arbitration Act applies, regard-

less of whether or not the parties' contract "involves commerce."

### The Misrepresentation Claim and the Arbitration Clause

The homeowner's suit alleged that the contractor made material misrepresentations about the company being bonded, licensed, and insured and about the City of Glendale having inspected the ongoing construction project. The issue as the parties present it here is whether the homeowner's claim constitutes an arbitrable dispute within the arbitration clause of the parties' agreement and thus whether the trial court properly confirmed the arbitration award. In construing arbitration clauses, courts frequently classify such clauses as "broad" or "narrow," *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003), especially in the context of applying the FAA. A broad arbitration provision covers all disputes arising out of a contract to arbitrate while a narrow provision limits arbitration to specific types of disputes. *Id.* The homeowner argues that the parties' agreement contained a narrow arbitration clause, which limits disputes subject to arbitration to those related "to whether the work complies with this Contract and the Drawings or whether payment is properly due." She argues that her misrepresentation claim does not fall within this narrow arbitration clause.

We acknowledge the caselaw that distinguishes between broad and narrow arbitration clauses. Here, however, there is no explicit trial-court ruling on this question and resolution of it does not aid us in determining the appeal. Rather, the critical question is whether the arbitration provision, be it broad or narrow, should have been enforced if the homeowner was fraudulently induced to enter the contract containing the arbitration provision.

If this case came within the FAA, which we reiterate that it does not, then even the homeowner's claim of fraud in the inducement concerning the bond, licensure, and insurance representation would be subject to arbitration. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* the U.S. Supreme Court held that if the claim of fraud in the inducement goes to the making of the arbitration clause itself, then a court may adjudicate that issue. 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)(6–3 decision). However, under the FAA, a court may not consider claims of fraud in the inducement of the contract generally. *Id.* at 404, 87 S.Ct. 1801. In *Buckeye Check Cashing, Inc. v. Cardegna,* the U.S. Supreme Court recently reaffirmed its *Prima Paint* holding. 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). *Cardegna* held that under the FAA, whether in state or federal court, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* The *Cardegna* Court declared that the *Prima Paint* holding made "irrelevant" the Florida Supreme Court's earlier conclusion in the case that state public policy and contract law permitted no salvageable parts of a contract found illegal and void under state law. *Id.* at 446, 126 S.Ct. 1204.[4]

---

**4.** Our Southern District recently followed *Cardegna* in *Kirby v. Grand Crowne Travel Network, LLC,* 229 S.W.3d 253, 255 (Mo.App. S.D.2007), wherein the Court "reluctantly" reversed and remanded for a stay of proceedings pending arbitration under the FAA. The *Kirby* plaintiffs claimed that the Missouri Merchandising Practices Act rendered the parties' contract invalid due to misrepresentations made by the defendant. 229 S.W.3d at 254–55. But the plaintiffs did not specifically challenge the validity of the arbitration provision itself, thus leading the Court to deter-

It appears to be undecided whether a party may be compelled to arbitrate under the Missouri Arbitration Act, passed in 1980, when he or she claims fraud in the inducement of the contract containing the arbitration provision at issue. *Prima Paint* and *Cardegna* make clear that, under the FAA, arbitration would be mandated, but the parties here have chosen to apply Missouri arbitration law to their disputes.

■ Prior to *Cardegna*, several Missouri cases held that before arbitration could be compelled, ostensibly under either the FAA or the Missouri Arbitration Act, the court must determine whether the parties' agreement containing the arbitration provision was valid and legally binding. *Estate of Burford ex rel. Bruse v. Edward D. Jones & Co.*, 83 S.W.3d 589, 592 (Mo. App. W.D.2002). *See also Hitcom Corp. v. Flex Fin. Corp.*, 4 S.W.3d 618, 620 (Mo. App. E.D.1999) ("Under Missouri's Arbitration Act, the circuit court properly denied defendants' motion to compel arbitration and stay litigation because there was a challenge to the validity of the 'Agreement' in which there is an allegedly binding arbitration provision."); *Silver Dollar City, Inc. v. Kitsmiller Construction Co., Inc.*, 874 S.W.2d 526, 536–37 (Mo.App. S.D. 1994). "Where the contract containing the arbitration provision sought to be enforced is found to be void or otherwise unenforceable, there is no valid arbitration agreement and the parties will not be compelled to arbitrate the dispute." *Burford*, 83 S.W.3d at 595 (citing *Silver Dollar City*, 874 S.W.2d at 537). The U.S. Supreme Court in *Cardegna*, however, squarely rejected just such a holding from the Florida Supreme Court, which had reasoned that to enforce an arbitration provision in a contract challenged as unlawful "could breathe life into a contract that not only

violates state law, but also is criminal in nature." *Cardegna*, 546 U.S. at 443, 126 S.Ct. 1204 (quoting *Cardegna v. Buckeye Check Cashing, Inc.*, 894 So.2d 860, 862 (Fla.2005)).

In any event, we need not address the holdings of *Burford, Hitcom,* and *Silver Dollar City* in relation to the FAA in light of *Cardegna* because the Missouri Arbitration Act, rather than the FAA, clearly applies in the present case. The reasoning of the Missouri Courts set forth in these cases, however, remains sound for determining whether the trial court here erred in ordering arbitration and confirming the award under the Missouri Arbitration Act. *Hitcom,* in particular, provides useful guidance because the HitCom Court expressly evaluated a claim of contractual invalidity and application of the contract's arbitration provision under the Missouri Arbitration Act.

■ The reasoning in *Burford, Hitcom,* and *Silver Dollar City* is similar to the reasoning of Justice Black's dissent in *Prima Paint,* which we find compelling. Justice Black, joined by two other justices, wrote, "The Court holds, what is to me fantastic, that the legal issue of a contract's voidness because of fraud is to be decided by persons designated to arbitrate factual controversies arising out of a valid contract between the parties." *Prima Paint,* 388 U.S. at 407, 87 S.Ct. 1801 (Black, J., dissenting). As Justice Black notes, *id.* at 412, 87 S.Ct. 1801, section 2 of the FAA provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole

mine that *Cardegna* compelled arbitration. *Id.*

or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

(Emphasis added.) Fraud constitutes one of the most common grounds for revoking a contract, and if the contract was procured through fraud, then no contract exists and nothing exists to be arbitrated unless the defrauded party elects to affirm the contract. *Prima Paint,* 388 U.S. at 412, 87 S.Ct. 1801 (Black, J., dissenting).

 Section 435.350 contains similar language stating that an arbitration agreement is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Under Missouri law, a party who is fraudulently induced to enter a contract may either affirm the contract and sue for damages or may disaffirm the contract and sue in equity for its rescission. *Cabinet Distributors, Inc. v. Redmond,* 965 S.W.2d 309, 314 (Mo.App. E.D. 1998). We hold that where a contract is induced by fraud, the defrauded party may escape arbitration under the Missouri Arbitration Act by rescinding the contract, thus leaving no valid contract and no valid arbitration provision.

 However, the problem here is that the homeowner never sought to rescind her contract. While the homeowner characterized her claim as one of misrepresentation, the broader tenor of her complaint is that the contractor's work was not compliant with the parties' contract. As to the alleged misrepresentation concerning the contractor's bond, licensure, and insurance, which the homeowner asserts induced her to enter the contract, the homeowner requested relief exclusively in the form of a damage award, thus implicitly affirming the contract and its arbitration clause. After implicitly affirming the arbitration clause, the homeowner has pointed to no actual damages proximately caused by the contractor's alleged misrepresentations. Actual damages are an essential element for an action for fraud. *MLJ Investments, Inc. v. Reid,* 905 S.W.2d 900, 901 (Mo.App. E.D.1995). The homeowner's allegation that the contractor misrepresented that the company was bonded, licensed, and insured gains significance only because of her complaints that the contractor rendered substandard work, in breach of the contract, and that the homeowner paid for the noncompliant work. Based on the averments in her petition, any damages the homeowner suffered could only have resulted from the noncompliant work performed by the contractor, not from the contractor's alleged statement that the company was bonded, licensed, and insured. The homeowner's allegation that the contractor misrepresented that the City of Glendale had inspected work on the ongoing project occurred months after the parties entered the contract and so cannot constitute fraud in the inducement of the contract. The homeowner would have no grounds to rescind the contract for fraud in the inducement on the basis of this latter statement. Furthermore, any damages attributable to this statement would have resulted solely from the homeowner's payment for noncompliant work.

### Conclusion

Because the homeowner did not seek to rescind the contract with the contractor, but instead implicitly affirmed the contract and sought damages for what is fundamentally the contractor's poor workmanship, we hold that her misrepresentation claim was arbitrable pursuant to the parties' ar-

bitration agreement. As a result, the trial court did not err in confirming the arbitration award. We affirm the trial court's judgment.

BOOKER T. SHAW and NANNETTE A. BAKER, JJ., concur.