**Timothy RILEY, Respondent,**

v.

**LUCAS LOFTS INVESTORS, LLC, Mark Cofman, Realty Exchange, Inc., Apartment Exchange, Inc., and Realtex Inc., Appellants,**

**and**

**Lucas Lofts Condominium Association, Inc., Rebecca Wright, Kellie Roland, Timothy Fleeger, Charles Patrick Stanley, III, Paric Corporation, Shay Roofing Inc., and Patrick Shelby d/b/a Shelby Roofing, Defendants.**

No. ED 99290.

Missouri Court of Appeals, Eastern District, Division Four.

July 9, 2013.

Transfer to Supreme Court Denied Aug. 22, 2013.

Application for Transfer Denied Nov. 26, 2013.

Lawrence P. Kaplan, Clayton, MO, John P. Rahoy, St. Louis, MO, for appellants.

John M. Hessel, St. Louis, MO, for respondent.

Matthew Menghini, Chesterfield, MO, Stephen M. Strum, Cynthia A. Masterson, St. Louis, MO, Jeffrey J. Brinker, Paul T. Krispin, Jr., Clayton, MO, for defendants.

PATRICIA L. COHEN, Judge.

### Introduction

Lucas Lofts Investors LLC (Seller), Mark Cofman, Realty Exchange, Inc., and Apartment Exchange, Inc. (collectively, Defendants), along with Realtex, Inc. d/b/a Coldwell Banker Premier Group (Third-Party Defendant),[1] appeal the judgment of the Circuit Court of the City of St. Louis denying Defendants' motion to compel arbitration[2] of claims Timothy Riley (Plaintiff) asserted against Defendants. Defendants and Third-Party Defendant argue that the trial court erred in denying the motion because a contract for the sale of two Lucas Lofts condominium units (Units) from Seller to Plaintiff contained an enforceable arbitration provision applicable to Plaintiff's claims. We affirm.

### Factual and Procedural Background

In 2008, Plaintiff purchased the Units from Seller. The Units, along with approximately one hundred other residential condominium units, are located in a seven-story building at 1114 Lucas Avenue in the City of St. Louis. The Lucas Lofts condominium declaration defines "Unit" as "a physical portion of the Condominium designated for separate ownership or occupancy." The declaration provides that the upper horizontal boundary of a Unit is "the undecorated surfaces of the ceiling facing the interior of the Unit." The declaration defines "common elements" as "all portions of the Condominium other than the Units" and provides that the roof of the building is a common element.

The contract for Plaintiff's purchase of the Units provided:

> In the event that after Closing, any disputes or disagreements between Seller and Purchaser arise with respect to the construction of Unit [sic] sold hereunder and/or this Contract (collectively, "Disputes"), then in any such event the Disputes shall be submitted to binding arbitration for resolution and determination. All such arbitration proceedings shall be conducted in accordance with the procedures contained in the Missouri Uniform Arbitration Act, Chapter 435 RSMo. 1994, as amended, and shall be determined in accordance with the substantive law of the State of Missouri.

Realty Exchange, Inc. was the selling agent in the transaction, and Apartment Exchange, Inc. was the condominium's management company at the time of purchase.

Plaintiff filed a petition against Defendants, whom Plaintiff described in another pleading as "Mark Cofman and his enter-

---

1. In his petition, Plaintiff did not assert claims against Realtex, Inc. Realtex, Inc. became a third-party defendant after defendant Lucas Lofts Condominium Association asserted third-party claims against it. Although Realtex, Inc. is a named appellant, it was not a party to the motion to compel arbitration. Lucas Lofts Condominium Association is not a party to this appeal.

2. Defendants titled their motion a "motion to dismiss or in the alternative stay this action and compel arbitration" and, in addition to their argument for arbitration, asserted multiple grounds for dismissal. However, Defendants alleged that an arbitrator must adjudicate their dismissal arguments and requested that the trial court "remand this matter for arbitration to address the ... grounds for dismissal." The trial court's judgment does not mention Defendants' dismissal arguments, and Defendants' point on appeal solely concerns the trial court's refusal to compel arbitration. Accordingly, we refer to Defendants' motion as the "motion to compel arbitration" and do not address their dismissal arguments.

prises," and eight other defendants that are not parties to this appeal. Plaintiff stated that "before, during, and after" his purchase of the Units, Defendants made various false representations to him concerning water leaking into the Units from the roof of the building. Plaintiff claimed that Defendants misrepresented to him that certain Defendants would repair the leaking roof of the building at their expense and pay the damages Plaintiff incurred as a result of the leaks. Plaintiff alleged that he reasonably relied on the representations when deciding to purchase the Units. Plaintiff asserted the following counts: (1) fraud against Seller, Mr. Cofman, Apartment Exchange, Inc., and Realty Exchange, Inc.; (2) negligent misrepresentation against Seller, Mr. Cofman, Apartment Exchange, Inc., and Realty Exchange, Inc.; (3) fraudulent inducement of the contract against Seller and Mr. Cofman; and (4) breach of the Missouri Merchandising Practices Act against Seller, Mr. Cofman, and Realty Exchange, Inc. Plaintiff sought actual damages for, among other things, damage resulting from the leaks to improvements and personal property in the Units, cleaning and restoration costs, mortgage and interest payments, and legal fees. Plaintiff also sought punitive damages for three of the counts. Plaintiff attached copies of his contract with Seller and the Lucas Lofts condominium declaration as exhibits to the petition.

Defendants moved the trial court to compel arbitration of Plaintiff's claims and stay the proceedings pending arbitration, citing the arbitration provision in the contract between Seller and Plaintiff. Defendants asserted that all of Plaintiff's claims against Defendants "rely on" the contract because: (1) Plaintiff attached the contract as an exhibit to his petition; and (2) Plain-

tiff asserted that he relied on Defendants' representations when deciding to purchase the Units. Defendants also contended that because they made the alleged representations while acting as authorized agents of Seller, all Defendants were "sellers" under the contract and entitled to enforce the arbitration provision. In response, Plaintiff argued that his claims were not subject to the arbitration provision because they did not arise out of the contract and that Defendants other than Seller could not enforce the arbitration provision.

After conducting a hearing on Defendants' motion, the trial court found that "an agreement to arbitrate certain types of claims exists" but that Plaintiff's tort claims did not fall within the substantive scope of the arbitration agreement. The trial court also found that Plaintiff could not be compelled to arbitrate his claims against Defendants other than Seller because Plaintiff sued them in their individual capacities, not as agents of Seller. The trial court entered an order and judgment denying Defendants' motion to compel arbitration. Defendants and Third–Party Defendant appeal.[3]

### Standard of Review

"When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006). "In making these determinations, the court should apply the usual rules of state contract law and canons of contract interpretation." *Id.* "Whether the trial court should have granted a motion to compel arbitration is a question of law that

---

**3.** Pursuant to section 435.440, the denial of a motion to compel arbitration is appealable.

*Jones v. Paradies,* 380 S.W.3d 13, 15 n. 1 (Mo.App. E.D.2012).

this Court reviews *de novo.*" *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 510 (Mo. banc 2012).

### Discussion

In their sole point on appeal, Defendants and Third–Party Defendant assert that the trial court erred in denying Defendants' motion to compel arbitration because the contract between Seller and Plaintiff contained an enforceable arbitration provision applicable to Plaintiff's claims. In response, Plaintiff contends that: (1) his claims are independent torts that fall outside the scope of the arbitration clause; (2) he never agreed to arbitrate any claims against Mr. Cofman, Apartment Exchange, Inc., Realty Exchange, Inc., or Realtex, Inc.; and (3) the arbitration clause is unenforceable because the contract was procured by fraud.

■ The Missouri Uniform Arbitration Act[4] provides that an agreement to arbitrate is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Mo.Rev.Stat. § 435.350.[5] "Under Missouri law, a party who is fraudulently induced to enter a contract may either affirm the contract and sue for damages or may disaffirm the contract and sue in equity for its rescission." *Fiordelisi v. Mt. Pleasant, LLC*, 254 S.W.3d 120, 128 (Mo.App. E.D.2008). "[W]here a contract is induced by fraud, the defrauded party may escape arbitration under the Missouri Arbitration Act by rescinding the contract, thus leaving no valid contract and no valid arbitration provision." *Id.* However, where a party asserting a claim of fraud in the inducement requests relief exclusively in the form of damages rather than rescis-

sion, the party "implicitly affirm[s] the contract and its arbitration clause." *Id.*

■ Here, Plaintiff asserted that Seller and Mr. Cofman fraudulently induced him to enter into the contract to purchase the Units. Rather than seeking rescission of the contract, Plaintiff sought actual and punitive damages. Thus, Plaintiff implicitly affirmed the contract and its arbitration clause. Accordingly, the trial court did not err in determining that a valid arbitration agreement exists between Seller and Plaintiff.

■ We next determine whether the trial court erred in concluding that the dispute does not fall within the scope of the arbitration agreement. *See Nitro Distrib.*, 194 S.W.3d at 345. "Arbitration is fundamentally a matter of consent, and thus a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Jones v. Paradies*, 380 S.W.3d 13, 17 (Mo.App. E.D.2012). Under Missouri law, arbitration proceedings are favored and encouraged to further the public policy of dispute resolution without resort to the courts. *McCracken v. Green Tree Servicing, LLC*, 279 S.W.3d 226, 227 (Mo. App. W.D.2009); *McCarney v. Nearing, Staats, Prelogar & Jones*, 866 S.W.2d 881, 887 (Mo.App. W.D.1993). However, "[p]olicies favoring arbitration are not enough, standing alone, to extend an arbitration agreement beyond its intended scope because arbitration is a matter of contract." *Manfredi v. Blue Cross & Blue Shield of Kansas City*, 340 S.W.3d 126, 131 (Mo. App. W.D.2011) (quotation omitted).

■ "Whether a dispute is covered by an arbitration clause is relegated to the courts as a matter of law and is to be

---

4. The parties do not dispute that Missouri's Uniform Arbitration Act, sections 435.350–435.470, applies to this case.

5. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

determined from the contract entered into by the parties." *Greenwood v. Sherfield*, 895 S.W.2d 169, 174 (Mo.App. S.D.1995). In making the determination, we apply "the usual rules of state contract law and canons of contract interpretation." *Nitro Distrib.*, 194 S.W.3d at 345. "Absent a clear, explicit statement in the contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the parties did not intend to withdraw such disputes from judicial authority." *Greenwood*, 895 S.W.2d at 174 (quotation omitted).

■■■ "At the very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract." *Nw. Chrysler–Plymouth, Inc. v. DaimlerChrysler Corp.*, 168 S.W.3d 693, 696 (Mo.App. E.D. 2005). "Where a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not compelled." *Id.* "The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties." *Greenwood*, 895 S.W.2d at 174.

■■■ Here, the contract between Seller and Plaintiff provided: "In the event that after Closing, any disputes or disagreements between Seller and Purchaser arise *with respect to the construction of Unit [sic] sold hereunder and/or this Contract* (collectively, 'Disputes'), then in any such event the Disputes shall be submitted to binding arbitration for resolution and determination." (emphasis added.) Thus, the parties agreed to arbitrate disputes arising with respect to: (1) the construction of the Units sold to Plaintiff; and (2) the contract.

Plaintiff based his claims on his assertion that Defendants falsely represented to him that they would repair the leaking roof of the building at their expense and pay the damages Plaintiff incurred as a result of the leaks. The contract governed Plaintiff's purchase of two "Units" of the Lucas Lofts condominium. The Lucas Lofts condominium declaration defines "Unit" as "a physical portion of the Condominium designated for separate ownership or occupancy." The upper horizontal boundary of a Unit is "the undecorated surfaces of the ceiling facing the interior of the Unit." By contrast, the declaration defines "common elements" as "all portions of the Condominium other than the Units" and expressly provides that the roof of the building is a common element. Therefore, Plaintiff's claims do not fall into the first category of arbitrable disputes because his claims arise out of the condition of the building's roof rather than construction of the Units he purchased.

Plaintiff did not assert any breach of contract claims against Defendants. Instead, Plaintiff asserted tort claims of fraud, negligent misrepresentation, fraudulent inducement, and breach of the Missouri Merchandising Practices Act based on Defendants' allegedly false representations about the building's leaking roof. Although Plaintiff referenced the contract in his petition and attached it as an exhibit, he did not rely on any provision of the contract as a basis for liability. *See Nw. Chrysler–Plymouth*, 168 S.W.3d at 697.

■■■ Defendants correctly point out that a party cannot avoid the language of an arbitration provision by casting its complaint in tort. *See Estate of Athon v. Conseco Fin. Servicing Corp.*, 88 S.W.3d 26, 30 (Mo.App. W.D.2002). However, a party's tort claim is subject to arbitration only if resolution of the claim requires

reference to or construction of the parties' contract. *Nw. Chrysler–Plymouth,* 168 S.W.3d at 696. Here, Plaintiff did not raise any issue the resolution of which requires reference to or construction of some portion of the contract. Moreover, the resolution of Plaintiff's tort claims does not require an examination of the various obligations of Plaintiff and Seller under the contract. *Cf. Fiordelisi,* 254 S.W.3d at 128 (where homeowner asserted breach of contract and tort claims against contractor, tort claim was arbitrable because "the broader tenor of her complaint [was] that the contractor's work was not compliant with the parties' contract"). Accordingly, Plaintiff's claims do not fall within the second category of disputes requiring arbitration because the claims did not "arise with respect to" the contract. *See, e.g., Greenwood,* 895 S.W.2d at 174–76.

Defendants contend that resolution of Plaintiff's tort claims requires reference to Seller's express limited warranty, attached as an exhibit to the contract. In the warranty, Seller agreed, subject to certain limitations, to repair or replace *"part or parts of the Unit* made necessary due to damage as a result of defective materials or defective workmanship." (emphasis added). The warranty further provided:

> [E]xcept as expressly set forth in Section A of this Express Limited Warranty, Seller makes no warranties or representations, express or implied, *concerning the condition of the Unit* and the Unit is sold "as is." Any other representations, statements or promises made by any person are unauthorized and are not binding on Seller.

(emphasis added). The warranty makes no mention of Seller's representations or obligations with regard to the building's roof, which is a common element separate from the Units. In addition, Plaintiff did not rely on the warranty as a basis for Defendants' liability. Thus, the resolution of Plaintiff's claims does not require reference to or construction of the warranty language. Moreover, the warranty provides only that representations by persons other than Seller are not binding on Seller. The warranty neither purports to exclude liability for Seller's own representations nor prevents liability for the representations made by another person as to that person.

Defendants also assert that although Plaintiff characterized his claims as torts, all of his allegations are essentially breach of contract claims and thus disputes arising with respect to the contract. In support of this argument, Defendants cite *Gregory v. Electro–Mechanical Corporation,* 83 F.3d 382 (11th Cir.1996). *Gregory* was not decided under Missouri law and, in any event, it is not persuasive. There, the plaintiffs asserted that the defendant breached a stock purchase agreement and also committed various torts. 83 F.3d at 384. The court noted that "the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims" and held that all of the claims fell within the scope of the agreement's arbitration clause. *Id.* at 384–86. By contrast, in the instant case, Plaintiff neither asserted breach of contract claims against Defendants nor alleged in his tort claims that any Defendant breached any provision of the contract.

■■■■ Defendants argue that the contract's integration clause [6] incorporated

---

**6.** Pursuant to several different provisions in the contract and its addenda, Seller and Plaintiff agreed that the contract constituted the entire agreement between them and that

"there are no agreements or representations except those expressly set forth herein." The contract also provided: "The parties agree that there has been no representation or in-

any representations by Defendants into the contract and, therefore, Plaintiff's claims concerning the representations necessarily arose out of the contract. Defendants cite no legal authority to support this argument and ignore principles of contract law to the contrary. "A written contract is presumed to be the final memorial of the parties' agreement and an integration clause further confirms the all-inclusive nature of the document." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 532 (Mo.App. E.D.2011) (quotation omitted). However, "[t]he rule that all prior and contemporaneous oral agreements and representations are merged in the written contract entered into by the parties does not apply to fraudulent representations made for the purpose of inducing a party to enter into such contract." *Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202, 212 (Mo.App. S.D.1985). Nor does the merger rule apply to negligent misrepresentations or misrepresentations in cases brought pursuant to the Missouri Merchandising Practices Act. *See, e.g., Cabinet Distributors, Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo.App. E.D.1998) (negligent misrepresentation); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 636 (Mo.App. E.D.1988) (Merchandising Practices Act). Because Plaintiff asserted claims of fraud, fraudulent inducement, negligent misrepresentation, and breach of the Missouri Merchandising Practices Act, the merger rule does not assist Defendants here.

Finally, Defendants maintain that Plaintiff failed to properly assert any tort claims because he did not plead his fraud allegations with particularity as required by Rule 55.15 and, therefore, his claims arise out of the contract. "Assuming, without deciding, that plaintiffs' petition did not plead fraud with sufficient particularity, this portion of the petition would have properly been subject to a motion for a more definite statement as authorized by Rule 55.27(d)." *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). "By failing to make such a motion, defendants are deemed, pursuant to Rule 55.27(f), to have waived any objection as to the particularity of the averments of fraud." *Id.* Defendants neither filed a motion for a more definite statement based on Plaintiff's alleged failure to plead fraud with sufficient particularity nor presented this argument to the trial court in support of their motion to compel arbitration. Accordingly, we decline to consider this argument.[7] Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.

ducement, express or implied, made to Purchaser except as stated herein and no person has the authority to make such representations or inducements other than as set forth herein."

7. Defendants also argue that the contract entitles Defendants other than Seller to compel arbitration because: (1) Plaintiff's claims concern the non-signatory Defendants' actions in their role as "legal representatives" of Seller;

and (2) Plaintiff's claims against the non-signatory Defendants arise solely out of the contract, but even if some are true tort claims, they are inextricably intertwined with the breach of contract claims. Given our conclusion that Plaintiff's claims do not fall within the scope of the arbitration agreement between Plaintiff and Seller, we do not address these arguments.