

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| KENNETH JOHNSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76863 |
| | ) | |
| RENT-A-CENTER and | ) | Opinion filed: November 4, 2014 |
| KELLI STANGLE, | ) | |
| | ) | |
| Appellants. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**The Honorable Patrick W. Campbell, Judge**

Before Division One:  Joseph M. Ellis, Presiding, Judge,
Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Appellants Rent-A-Center and Kelli Stangle appeal from an order entered in the Circuit Court of Jackson County denying their Motion to Compel Arbitration and Stay Action in a tort case filed against them by Kenneth Johnson.  For the following reasons, the circuit court's decision is reversed, and the cause is remanded to the trial court for entry of an order staying the proceedings.

On September 19, 2011, Johnson obtained, under a Rental-Purchase Agreement, a television from a Rent-A-Center store in Kansas City, Missouri managed

by Stangle.[1]  On June 25, 2012, Johnson acquired a refrigerator from the same store under a similar agreement.  Both Rental-Purchase Agreements incorporated, by reference, attached Arbitration Agreements.  Of import to our ruling today, both arbitration agreements contained delegation provisions.  The 2011 Arbitration Agreement provided that either party may demand that issues related to "the validity, enforceability, arbitrability or scope of th[at] Arbitration Agreement" be determined by an arbitrator.  Similarly, the 2012 Arbitration Agreement provided that an arbitrator decide any dispute relating to the "interpretation, applicability, enforceability, or formation" of the Arbitration Agreement.  Of equal import to ruling today, Johnson failed to raise any argument challenging the enforceability of either delegation provision.

Pursuant to the Rental-Purchase Agreements, Rent-A-Center was responsible for maintaining and servicing the rented items.  On several occasions, Rent-A-Center employee Eric Patton was sent to Johnson's home to service the television and/or refrigerator.

On August 25, 2012, Patton returned to Johnson's home wearing a Rent-A-Center uniform.[2]  As a Rent-A-Center employee was expected, Johnson let Patton inside.  Once inside, Patton seriously beat and then robbed Johnson.

On April 15, 2013, Johnson filed a Petition for Damages against Appellants in the Circuit Court of Jackson County, claiming that Appellants were negligent in their hiring

---

[1] Under the terms of the agreement, if he made his monthly payments for a year, Johnson would be able to acquire ownership of the used television valued by Rent-A-Center at $623.76 for a total of $1,329.75 in payments.

[2] In his petition, Johnson alleged that Patton was an employee of Rent-A-Center.  In their answer, Appellants claimed that Patton's employment with Rent-A-Center had been terminated prior to the August 25, 2012 incident.

2

and supervision of Patton and in failing to warn him of the danger Patton posed. Johnson also included a count requesting punitive damages.

On June 26, 2013, in addition to filing an answer to the petition, Appellants filed their Motion to Compel Arbitration and Stay Action, arguing that the terms of the Rental-Purchase Agreements with Johnson required that this dispute be submitted to arbitration. Appellants first argued that the threshold issue of whether Johnson's claims should be subject to the arbitration agreements was an issue that must be determined by an arbitrator, rather than a court, under the express terms of those Arbitration Agreements. Appellants next argued that, even if the court could properly determine the issue of arbitrability, the claims asserted in Johnson's petition were, indeed, arbitrable under the broad terms of the arbitration agreements.

In response, Johnson filed a Memorandum in Opposition, arguing that, under Missouri case law, the claims he was asserting were not arbitrable because his claims did not have a meaningful relationship to the Rental-Purchase Agreements. Johnson did not address Appellants' principle assertion that the issue of arbitrability was for the arbitrator to determine.

On September 10, 2013, the circuit court entered its order denying the motion to compel arbitration, stating in pertinent part:

> Defendant seeks an order of this Court compelling arbitration of Plaintiff's tort claims. Missouri law provides that "[a]t the very least, for a tort claim to be subject to arbitration under a broad arbitration clause, it must first raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract. Where, however, a tort claim is independent of the contract terms and does not require

3

reference to the underlying contract, arbitration is not compelled."[3]  *Estate of Athon v. Coneco Financial Serv. Corp.*, 88 S.W.3d 26, 30 (Mo. App. 2002).  Plaintiff's tort claims are independent of the contract terms and do not require reference to the parties' underlying contract.  That the interests of justice would be served by denying Defendants' Motion to Compel Arbitration and Stay Action filed on June 26, 2013.

The court did not address, in any fashion, Appellants' argument that the issue of arbitrability was for the arbitrator to determine.  Appellants bring two points on appeal challenging the trial court's denial of the motion to compel arbitration.[4]

"Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews *de novo.*"  **Riley v. Lucas Lofts Investors, LLC**, 412 S.W.3d 285, 289-90 (Mo. App. E.D. 2013) (internal quotation omitted). "A motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  **Kohner Props. v. SPCP Group VI, LLC**, 408 S.W.3d 336, 346 (Mo. App. E.D. 2013) (internal quotation omitted).

In their first point, Appellants claim the circuit court erred in denying the motion to compel arbitration based upon its determination regarding the arbitrability of Johnson's claims.  They argue that this threshold issue regarding the arbitrability of the dispute was for the arbitrator, and not the court, to determine pursuant to the provisions of the

---

[3] The trial court accurately stated the applicable law for assessing arbitrabiity.  Though one of the two arbitration agreements declares that the law of the state of Texas was to be applied in determining the validity and enforceability of the arbitration agreement, we note that Texas law mirrors Missouri law on this topic.  "A claim is not subject to arbitration only if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract."  **Glassell Producing Co. v. Jared Res., Ltd.**, 422 S.W.3d 68, 77 (Tex. App. 2014) (numerous internal citations omitted.).  Thus, it matters not whether Missouri or Texas law is applied.

[4] "Pursuant to section 435.440, the denial of a motion to compel arbitration is appealable."  **Riley v. Lucas Lofts Investors, LLC**, 412 S.W.3d 285, 289 n.3 (Mo. App. E.D. 2013).

4

Arbitration Agreements between Rent-A-Center and Johnson. We agree and find this issue dispositive of the appeal.

Both Arbitration Agreements expressly provide that they are to be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*[5] Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." "The FAA thereby places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010) (internal citations omitted). "Like other

---

[5] While Respondent contends on appeal that the FAA is inapplicable and that only Texas law should be applied in analyzing the 2011 Arbitration Agreement and only Missouri law should be applied to the 2012 Arbitration agreement, the agreements both expressly state that they are governed by the FAA and that the law of those respective states is to be applied when relevant under the FAA. With regard to choice of law, the 2011 Arbitration Agreement states:

> **This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and is governed by the FAA, 9 U.S.C. §§ 1 et seq., and not by any state arbitration law**. However, Texas law shall be applied in determining the validity and enforceability of this Arbitration Agreement (or any provision thereof) to the extent that state law is relevant under the FAA in determining the validity and enforceability of this Arbitration Agreement. (emphasis added)

The 2012 Arbitration Agreement provides:

> **The Federal Arbitration Act (9 U.S.C. §1 et seq.) shall govern this Agreement, which evidences a transaction involving interstate commerce**. . . . The Arbitrator may award any party any remedy to which that party is entitled under applicable law (including without limitation, legal, equitable, and injunctive relief) but such remedies shall be limited to those that would be available to a party in a court of law for the Claims presented to and decided by the Arbitrator. The Arbitrator shall apply the substantive law including, but not limited to, the applicable statutes of limitations (and the law of remedies, if applicable) of the state in which the Claim arose, or federal law, or both, as applicable to the Claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. (emphasis added)

contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (internal quotation omitted).

The FAA also establishes procedures for courts to use in implementing § 2's substantive rule. *Id.* "Under § 3, a party may apply to a . . . court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Id.* "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a . . . court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* "The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'"[6] *Id.*

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 2777. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the [FAA] operates on this additional arbitration agreement just as it does on any other." *Id.* at 2777-78.

The United States Supreme Court has declared that, under § 2 of the FAA, arbitration provisions are severable from a contract as a whole and, moreover, provisions delegating gateway issues to the arbitrator are further severable from general

---

[6] In deciding arbitrable disputes, including whether a particular claim is subject to arbitration, "[a]rbitrators are expected to follow applicable law unless stated otherwise in the arbitration agreement," *Cremin v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006), and "judicial scrutiny of arbitration awards . . . is sufficient to ensure that arbitrators comply with the requirements of the [law]." *Shearson/Americal Express, Inc. v. McMahon*, 482 U.S. 220, 232, 107 S.Ct. 2332, 2340, 96 L.Ed.2d 185 (1987).

arbitration provisions. *Id*. "Section 2 operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce." *Id*. at 2779. Accordingly, under *Jackson*, "unless [the party opposing arbitration has] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."[7] *Id*. In other words, "[e]ven when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge *to the arbitrator* unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator – the so-called 'delegation clause.'" *Id*. at 2781 (Stevens, J., dissenting) (emphasis in original).[8] Regardless of whether we agree with the reasoning expressed therein, this Court is bound by the Supreme Court's decision in *Jackson* and has no authority to overrule that decision. *See **State ex rel. Simmons v.***

---

[7] On the other hand, where a specific challenge is made to the validity of the delegation provision, that issue must be resolved by the court. ***Rent-A-Center West, Inc. v. Jackson***, 561 U.S. 63, 130 S.Ct. 2772, 2778-79 (2010). For example, a specific claim that the delegation provision is unconscionable would need to be resolved by the court as a threshold matter. In this case, Johnson did not present a specific challenge to the delegation clause.

Moreover, several federal cases have recognized that, even where delegation clauses clearly and unmistakably grant the power to decide arbitrability to the arbitrator, such provisions may be ignored by a court if the assertion of arbitrability is "wholly groundless." "[W]here the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least *arguably* covered by the agreement." ***Turi v. Main St. Adoption Servs., LLP***, 633 F.3d 496, 511 (6th Cir. 2011) (emphasis in original). A "wholly groundless" inquiry allows the court to determine that it is "satisfied" under § 3 of the FAA that the issues are referable to arbitration under the agreement, "while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." ***Qualcomm Inc. v. Nokia Corp.***, 466 F.3d 1366, 1373 n.5 (Fed. Cir. 2006) (applying 9th Circuit law). Johnson did not ask the trial court to adopt the wholly groundless approach, and the trial court made no such determination in this case.

[8] As noted, *supra*, Johnson did *not* challenge the delegation clause. Since no specific attacks were made on the delegation provisions in the subject arbitration agreements, we need not, and do not, address any public policy issues relating to those provisions when contained in an adhesion contract, in particular, whether such provisions are *per se* unconscionable or infringe on rights relating to access to the courts.

*Roper*, 112 S.W.3d 397, 419 (Mo. banc 2003); *Schlereth v. Hardy*, 280 S.W.3d 47, 53 (Mo. banc 2009).

In *Jackson*, the arbitration agreement provided that "the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable." *Jackson*, 130 S.Ct. at 2775 (internal quotation omitted). Jackson challenged the arbitration agreement as a whole as unconscionable but failed to specifically challenge the delegation provision. *Id*. at 2779. The Supreme Court held that, absent a specific challenge to the delegation provision, any determination as to the conscionability of the arbitration agreement as a whole must be left to the arbitrator. *Id*.

In the case at bar, the 2012 Arbitration Agreement contained language identical to that in *Jackson*, providing that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable." While Respondent claims this language does not clearly and explicitly give the arbitrator the authority to determine whether his tort claim falls within the scope of the arbitration agreement, it does, in fact, clearly and explicitly state that "the Arbitrator shall have exclusive authority to resolve any dispute relating to the . . . applicability . . . of this [Arbitration] Agreement." The 2011 Arbitration Agreement is likewise clear and unequivocal in requiring an arbitrator to decide any dispute regarding the "arbitrability or

8

scope of th[e] Arbitration Agreement or the Rental-Purchase Agreement."

Respondent argues that allowing an arbitrator to decide arbitrability based upon a provision contained within an invalid or inapplicable arbitration agreement is illogical and circular. Similar arguments were advanced in *Jackson* and recognized as valid in the dissenting opinion in that case. *Id*. at 2787-88 (Stevens, J., dissenting) ("The notion that a party may be bound by an arbitration clause in a contract that is nevertheless invalid may be difficult for any lawyer--or any person--to accept, but this is the law. . . ."). This Court, like "any lawyer--or any person" as suggested by Mr. Justice Stevens, finds it hard to accept that a provision within a wholly invalid, and therefore void *ab initio*, agreement can be enforceable. But a majority of the United States Supreme Court has so held and, as noted *supra*, this Court is bound to follow the most recent and controlling decisions of the United States Supreme Court. Under *Jackson*, "[a] claim that an *entire* arbitration agreement is invalid will not go to the court unless the party challenges the *particular sentences* that delegate such claims to the arbitrator, on some contract ground that is particular and unique to those sentences." *Id*. at 2787 (Stevens, J., dissenting) (emphasis in original).[9]

In short, because Respondent did not assert specific challenges to the delegation provisions contained within the Arbitration Agreements, under *Jackson*, the trial court erred in denying Appellant's motion to compel arbitration so that an arbitrator can

---

[9] Respondent also raises new claims on appeal that were not raised before the circuit court nor considered by the circuit court. We decline to review these arguments as arguments raised for the first time on appeal are not preserved for appellate review. *See Sparks v. Sparks*, 417 S.W.3d 269, 284 (Mo. App. W.D. 2013); *Guengerich v. Barker*, 423 S.W.3d 331, 342 (Mo. App. S.D. 2014); *Neisler v. Keirsbilck*, 307 S.W.3d 193, 197 (Mo. App. S.D. 2010).

determine the threshold issues of arbitrability involved in this case. Accordingly, the circuit court's ruling is reversed, and the cause is remanded to the circuit court for the entry of an order compelling arbitration and staying Respondent's suit pending a determination of the threshold issues by an arbitrator.

_____//s//_____
Joseph M. Ellis, Judge

All concur.